## MAY et al. v. UNITED STATES.†

### (Circuit Court of Appeals, Eighth Circuit. August 19. 1912.)

### No. 3,756.

1. INTERNAL REVENUE (§ 47*)—DEFRAUDING UNITED STATES—OLEOMARGARINE TAX—EVIDENCE.

Evidence *held* to sustain a conviction that one engaged in the business of manufacturing colored oleomargarine attempted to defraud the United States of the tax thereon in violation of Oleomargarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234).

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 144-150; Dec. Dig. § 47.*]

2. GRAND JURY (§ 7*)—FEDERAL COURTS—ORDER.

A federal judge, having been designated by the senior circuit judge to act in the Western district of Missouri, thereby had authority by Rev. St. § 591 (U. S. Comp. St. 1901, p. 480), to discharge all judicial duties of the judge of that district, so that an order for the drawing of a grand jury entitled "In the United States District Court for the Western District of Missouri," and signed by such judge, when filed in the clerk's office of that court, was a sufficient order of the court within section 810 (U. S. Comp. St. 1901, p. 627), providing that no grand jury shall be summoned to attend any Circuit or District Court unless one of the judges of such Circuit Court or a judge of such District orders that a venire issue therefor.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 2, 16, 21; Dec. Dig. § 7.*]

3. GRAND JURY (§ 8*)—SELECTION—METHOD.

A grand jury being desired in a federal District Court, and the jury commissioner being absent, the court appointed R. as jury commissioner

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied December 28, 1912.

in his place. R. and the clerk drew from the box the names of the jurors which were placed in the venire. There was nothing to show that the names in the box were not put there by the clerk and the original jury commissioner at some prior time, nor did it appear that the clerk ever put any names in the box without the corresponding action of the regular jury commissioner. *Held*, that the jury was properly drawn, and that it was not necessary that additional names should be placed in the box by R.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 16–20; Dec. Dig. § 8.*]

4. GRAND JURY (§ 9*)—VENIRE—NAMES OF JURORS.

A grand jury venire was not illegal because the names of the jurors were attached thereto instead of being inserted in the body thereof.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 21–26; Dec. Dig. § 9.*]

5. GRAND JURY (§ 9*)—SUMMONING—MODE.

Act Cong. May 14, 1890, c. 202, § 3, 26 Stat. 106 (U. S. Comp. St. 1901, p. 386), provides that jurors shall be summoned for the Circuit and District Courts of Missouri as provided by law for the summoning of jurors in the districts, and whenever the Circuit and District Courts in either of the districts or divisions shall be held at the same time and place, jurors shall not be summoned for each, but for both of the courts, and they shall act accordingly as grand and petit jurors in both courts. *Held*, that such provision only means that when both courts are in session two sets of jurors shall not be drawn, one for each, and hence, where it did not appear that any grand jurors had been drawn for the Circuit Court, a conviction in the District Court could not be set aside because the grand jurors finding the indictment were summoned for that court, and not for both the Circuit and District Courts.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 21–26; Dec. Dig. § 9.*]

6. CRIMINAL LAW (§ 1144*)—APPEAL—PRESUMPTIONS—SUMMONING GRAND JURY.

Under Rev. St. § 802 (U. S. Comp. St. 1901, p. 625), providing that jurors shall be returned from such parts of the district, from time to time, as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur unnecessary expense, or to unduly burden the citizens of any part of the district with such service, jurors must be returned from the whole district until the court orders otherwise, and, if no order is made, it will be presumed that the court has determined that drawing them from the whole district will be most favorable to an impartial trial, etc.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2736–2781, 2901, 3016–3037; Dec. Dig. § 1144.*]

7. INDICTMENT AND INFORMATION (§ 25*)—GRAND JURORS—RESIDENCE.

An indictment need not state that the grand jurors who found it are residents of the division of the district in which they served.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 92, 108–114; Dec. Dig. § 25.*]

8. INDICTMENT AND INFORMATION (§ 125*)—OLEOMARGARINE TAX—DEFRAUDING UNITED STATES—INDICTMENT—DUPLICITY.

Oleomargarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234), provides that whenever any person engaged in manufacturing oleomargarine defrauds, or attempts to defraud, the United States of the tax on oleomargarine produced by him, he shall forfeit his factory, etc. *Held*, that an indictment charging that on a specified date, and on each and every day thereafter during specified months, defendants were engaged in carrying on the business of manufacturing

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

oleomargarine, and did then and there unlawfully and feloniously defraud, and attempt to defraud, the United States of the tax on oleomargarine produced by them, etc., was not objectionable for duplicity in that it charged two felonies, one of defrauding, and the other of attempting to defraud the United States of the tax imposed on manufactured oleomargarine.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

9. INDICTMENT AND INFORMATION (§ 121*)—BILL OF PARTICULARS.
While a bill of particulars cannot make an indictment valid which fails to state an essential element of the offense, in case objection is made in the proper time and manner, yet when an indictment alleges the facts constituting the essential elements of the offense with such certainty that it cannot be pronounced bad on motion to quash or demurrer, and yet is couched in such language that the accused may be surprised at the trial, he may obtain a bill of particulars in advance of the trial.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 316–320; Dec. Dig. § 121.*]

10. INTERNAL REVENUE (§ 47*)—OLEOMARGARINE—POUND TAX—DEFRAUDING UNITED STATES—EVIDENCE—INTERNAL REVENUE REGULATIONS.
In a prosecution for defrauding the United States out of the pound tax on oleomargarine, as distinguished from the license tax, in violation of Oleomargarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234), an internal revenue regulation, which it was claimed gave a person engaged in the oleomargarine business the whole of the calendar month in which to make payment, was applicable, if at all, only to the yearly license required of a manufacturer, wholesale or retail dealer in oleomargarine.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 144–150; Dec. Dig. § 47.*]

11. CRIMINAL LAW (§ 829*)—TRIAL—REQUEST TO CHARGE.
A request to charge substantially covered by an instruction given may be properly refused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. § 829.*]

12. SEARCHES AND SEIZURES (§ 7*)—PRIVATE PAPERS.
Where internal revenue officers armed with a search warrant raided defendants' place of business to obtain evidence of an alleged violation of Oleomargarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234), and seized various articles which they found on the premises, together with letters, papers, and two promissory notes signed by defendant M., tending to connect him with the business carried on in the place searched, such act did not constitute a violation of M.'s right to be free from unlawful searches and seizures.

[Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. § 5; Dec. Dig. § 7.*]

13. WITNESSES (§ 300*)—PRIVILEGE.
That internal revenue officers, in raiding defendants' place of business for alleged violation of Oleomargarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234), seized certain articles, letters, papers, and two promissory notes signed by defendant M., which notes were later introduced in evidence against him, did not constitute a violation of his constitutional right against being compelled to give evidence against himself.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1042, 1042½; Dec. Dig. § 300.*]

14. INTERNAL REVENUE (§ 47*)—INDICTMENT—COUNTS—CONVICTION.
    Where two counts of an indictment each charged a violation of Oleo-
    margarine Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 (U. S. Comp.
    St. 1901, p. 2234), the same evidence and the same acts being relied
    on to convict defendants on both counts, and the judge charged that
    the two counts really constituted but one offense, a conviction on the
    second count could not be sustained.
      [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 144–
    150; Dec. Dig. § 47.*]
      Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the West-
ern District of Missouri.

Joseph G. May and others were convicted of defrauding or at-
tempting to defraud the United States of the tax on colored oleomar-
garine, and they bring error.  Affirmed.

Shepard Barclay (Roland Hughes, P. H. Cullen, and Thomas T.
Fauntleroy, on the brief), for plaintiffs in error.

Leslie J. Lyons, U. S. Atty. (Hugh C. Smith and Thad. B. Landon,
As.t. U. S. Attys., on the brief), for the United States.

Before SANBORN and HOOK, Circuit Judges, and WILLARD,
District Judge.

WILLARD, District Judge.  [1] The plaintiffs in error, Thomp-
son, Taylor, and Joseph G. May, were convicted in the court below
of a violation of section 17 of the Oleomargarine Act (Act Aug. 2,
1886, c. 840, 24 Stat. 212 [U. S. Comp. St. 1901, p. 2234]).  The case
made by the evidence was like this:  Several persons under the name
of the Clayton Creamery were, during the summer and fall of 1910,
engaged in business at 809 West Twelfth street, Kansas City, Mo.
One of their number had a license to do business as a retail dealer
in oleomargarine.  They employed persons to travel over certain
routes soliciting purchases of oleomargarine.  Drivers were also em-
ployed to travel over these routes delivering the goods sold by the so-
licitors.  They commenced with one delivery wagon in April, and by
October. the business had grown to such an extent that five delivery
wagons were required.  Each one of the persons engaged in that
work delivered between 700 and 1,200 pounds a week.  The oleo-
margarine thus delivered was, according to the testimony of the de-
livery men and the purchasers, colored so that it looked like butter.
They never paid the tax of 10 cents a pound upon this product.  That
they intended to evade the payment of the tax is apparent from the
price which they paid for white oleomargarine and the price at which
they sold the colored article, which was 25 cents a pound.  For the
former they paid between 13½ cents and 18 cents a pound; when
colored so as to look like butter it was subject to an additional tax
of 9¾ cents.  They paid their solicitors at the rate of about $1.35 a
day and 2 cents a pound.  They paid the delivery men as high as $15
a week, and 2 cents a pound on all in excess of 750 pounds a week.
That the white oleomargarine was manufactured into colored oleo-
margarine upon their premises is indicated by the fact that they

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bought large quantities of the white product and very small quantities of the colored product. Between June 21, 1910, and October 29, 1910, they bought of Swift & Co. 57,840 pounds of the white oleomargarine. They bought white oleomargarine also from Morris & Co. and from W. J. Moxley. The place where the business was carried on had been for some time prior to October 29, 1910, watched by the government revenue officials. On that day these officials accompanied by city policemen entered the place, and in the front room of the building they found Stowers, who is not one of the plaintiffs in error, sitting at a desk. They demanded admission to the rear part of the building, which was refused, and the door was broken open with an iron bar and a jimmy. On the inside of this door were two stirrups, so that two 2x4's could be dropped in them. In the room thus entered was found a large ice box about 6 feet square, running almost to the ceiling, with walls 6 inches thick. There were arrangements for locking the door of this ice box on the inside, but no arrangements for locking it on the outside. The defendant Taylor was found in this ice box mixing coloring matter and white oleomargarine. The defendant Thompson was standing near by washing his hands and arms. Six tubs of yellow oleomargarine were found in the ice box and pure white oleomargarine thrown upon the floor. A glass smeared with coloring matter and a can of coloring matter were found in the building, also boxes partially filled with yellow oleomargarine in prints, one-pound packages, also an oil and a gas stove for heating water, and 30 tubs of white oleomargarine. The window on the west side of the building was boarded up tight, and the south windows had curtains extending over the lower part probably half-way up.

The defendant Joseph G. May was not found in the building at that time, but the evidence is ample to show that he was engaged with Thompson and Taylor in the enterprise. Swift & Co. sold oleomargarine to him during the time covered by the indictment. Morris & Co. sold him oleomargarine on October 18, 1910. He employed Wilson as a driver; he figured up the accounts of Mrs. Rairdon, a solicitor, and paid her, and he signed a contract with Gardiner as a driver.

The evidence in the case, an outline of which has been given above, was entirely sufficient to convict all of the defendants of a violation of section 17. The questions to be now considered are whether the conviction upon this evidence must be set aside by reason of errors occurring in the proceedings which led up to the sentence.

[2] Counsel for defendants commenced their attack upon these proceedings by objecting to the sufficiency of the order of the judge directing a grand jury to be summoned. Section 810 of the Revised Statutes (U. S. Comp. St. 1901, p. 627) provides that:

"No grand jury shall be summoned to attend any Circuit or District Court unless one of the judges of such Circuit Court, or a judge of such district, in his own discretion, or upon a notification by the district attorney that such a jury will be needed, orders a venire issue therefor."

The order for this grand jury was made by Judge McPherson, judge of the District Court for the Southern District of Iowa. It

appears from the record that he had been designated by the senior circuit judge to act in the Western district of Missouri during the time covered by these proceedings.

While so acting he had, by virtue of section 591 of the Revised Statutes (U. S. Comp. St. 1901, p. 480), authority to discharge all the judicial duties of the judge of that district, and therefore he had authority to order a venire for a grand jury. Something is said in the brief of the defendants to the effect that this order was a personal order of Judge McPherson. Just what is meant by that is not clear. It was a written order entitled "In the United States District Court for the Western District of Missouri." It was signed, "Smith McPherson, Judge," and was filed in the clerk's office of that court. This was sufficient as an order of the court.

[3] The next attack is upon the manner in which the grand jury was drawn. The jury commissioner, Welsh, was absent, and the court appointed Rust as a jury commissioner in his place. Rust and the clerk drew from the box in the manner provided by the law the names of the jurors which were placed in the venire. It is said, however, by the defendants, that Rust had nothing to do with selecting the jury. By this is meant probably that he had nothing to do with putting the names of any jurors in the box; but the fact that the names of 21 jurors were drawn out of the box is enough to show that there were sufficient names in the box to satisfy the order of the court. There is no evidence in the case to show that the names in the box were not put in there by the clerk and Welsh, the jury commissioner, at some previous time. There is nothing whatever to indicate that the clerk ever put any names in the box without the corresponding action of Welsh. Under the circumstances, it was not at all necessary that additional names should be placed therein by Rust.

[4] It is further said that the venire was illegal because it did not contain the names of the jurors. The venire directed the marshal to summon "the persons named in the list hereto attached." It seems from the proceedings at the trial that this objection was based upon the fact that the names were not inserted in the body of the venire, but were inserted in a list attached thereto. There is no merit in this claim.

[5] The Act of May 14, 1890, c. 202, § 3, 26 Stat. 106 (U. S. Comp. St. 1901, p. 386), provides as follows:

"Jurors shall be summoned for the courts hereby created (Circuit and District Courts in Missouri) as now provided by law for the summoning of jurors in the said districts, and whenever the Circuit and District Courts in either of said districts or divisions shall be held at the same time and place, jurors shall not be summoned for each of said courts, but for both of said courts, and they shall act accordingly as grand and petit jurors for both of said courts."

The defendants say that the conviction must be set aside, because these grand jurors were summoned for the District Court, and not for the Circuit and District Courts. The law above cited means that when both courts are in session two sets of jurors shall not be drawn, one for the Circuit and one for the District

Court. In the present case there is nothing to show that two sets were drawn. If it had appeared that grand jurors had already been drawn for the Circuit Court, and while discharging their duties therein these grand jurors had been drawn in the District Court, a different question would have been presented. This contention cannot be sustained.

[6] Section 802 of the Revised Statutes (U. S. Comp. St. 1901, p. 625) provides as follows:

"(Jurors, how to be apportioned in the district.) Jurors shall be returned from such parts of the district, from time to time, as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly to burden the citizens of any part of the district with such service."

Until the court otherwise orders, jurors must be returned from the whole district. If no order is made, the presumption is that the court has determined that drawing them from the whole district will be most favorable to an impartial trial, and will not unduly burden the citizens of any part of it, although some unnecessary expense may thereby be incurred. No order directing jurors to be drawn from a part of the district had ever been made.

[7] It is further claimed that the indictment does not state that the grand jurors are residents in the division of the district in which they served. The indictment commences as follows:

"United States of America, Western Division, Western District of Missouri
—ss.:

"In the District Court of the United States for the Western Division of the Western District of Missouri.

"The grand jurors of the United States of America, duly chosen, selected, impaneled, sworn and charged to inquire of and concerning crimes and offenses in the Western division of the Western district of Missouri, on their oaths present."

If they were duly selected they must have been selected from the Western division of the Western district. It was no more necessary to state in the indictment that the grand jurors were residents of that division than it was to state that they were of legal age, or that they were citizens, or that their names had been placed in the box by the clerk and commissioner and then been drawn alternately from the box by those officials.

[8] After making these objections to the indictment, all of which were overruled, the defendants demurred to the first count. That count is as follows:

"On or about the 1st day of July, 1910, and on each and every day thereafter during the months of July, August, September, and up to and including the 29th day of October, A. D. 1910, at Kansas City, Jackson county, Mo., in said division and district, and within the jurisdiction of this court, Joseph G. May, William C. Stowers, Herbert Taylor, Fred May, and W. L. Thompson, whose Christian name is to the grand jurors unknown, were engaged in and carrying on the business of manufacturing oleomargarine at said Kansas City, Mo., and did then and there unlawfully and feloniously defraud, and attempt to defraud, the United States of America of the tax provided by

law, and required to be paid on the oleomargarine produced by them, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the United States."

This count is based upon section 17 of the Act of August 2, 1886, 24 Stat. 209, which is as follows:

"That whenever any person engaged in carrying on the business of manufacturing oleomargarine defrauds, or attempts to defraud, the United States of the tax on the oleomargarine produced by him, or any part thereof, he shall forfeit the factory and manufacturing apparatus used by him, and all oleomargarine and all raw material for the production of oleomargarine found in the factory and on the factory premises, and shall be fined not less than five hundred dollars nor more than five thousand dollars and be imprisoned not less than six months nor more than three years."

It is said that this count is bad for duplicity, as two felonies are charged, one, the act of defrauding, and, the other, the attempt to defraud, both under section 17. This contention is answered by the case of Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097.

An indictment charging a violation of this same section has been sustained by this court in the case of Fred D. May et al. v. United States, 199 Fed. 42, just decided. That indictment differs from this one, in that the former states the street number of the factory, where the business was carried on, the name under which the defendants were doing business, and the number of pounds of oleomargarine produced without payment of the tax of which the defendants attempted to defraud the United States. No allegations of a similar character appear in this indictment, but no one of these facts there stated was an essential element of the offense. The Supreme Court said in the case of Ledbetter v. United States, 170 U. S. 606, at page 611, 18 Sup. Ct. 774, at page 776 (42 L. Ed. 1162):

"The cases wherein it is held that an indictment in the exact language of the statute is not sufficient are those wherein the statute does not contain all the elements of the offense, as in United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135, where a statute against passing counterfeit money failed to aver the scienter; but where the statute sets forth every ingredient of the offense, an indictment in its very words is sufficient, though that offense be more fully defined in some other section."

The decision in the case of Fred D. May is authority for saying that this count contained every element of the offense. The most that can be claimed by the defendants is that it was not so full as it might have been in giving the details of the offense. Is this such a defect in the indictment as requires a reversal of this judgment? In the case of Clement v. U. S., 149 Fed. 305, at page 313, 79 C. C. A. 243, at page 251, this court said:

"We must, so far as possible, consistently with insuring an accused person a fair and impartial trial, guaranteed to him by the Constitution and laws, disregard form, imperfection of statement, and unimportant defects, which do not reasonably tend to the prejudice of the accused. This we are commanded to do by positive law (section 1025, Rev. St. [U. S. Comp. St. 1901, p. 720]) as well as by repeated admonitions of the Supreme Court."

In the case of Brown v. United States, 143 Fed. 60, at page 62, 74 C. C. A. 214, at page 217, this court said:

"But it is to be borne in mind that what is required is reasonable, not absolute or impracticable, particularity of statement; else the rules of criminal pleading will be deflected from their true purpose, which is to secure the conviction of the guilty, as well as to shield the innocent. Evans v. United States, 153 U. S. 584, 590, 14 Sup. Ct. 934, 38 L. Ed. 830; Cochran v. United States, 157 U. S. 286, 290, 15 Sup. Ct. 628, 39 L. Ed. 704; Durland v. United States, 161 U. S. 306, 314, 315, 16 Sup. Ct. 508, 40 L. Ed. 709. It is also to be borne in mind that a defect in matter of substance is fatal, while a defect in matter of form only—and this includes the manner of stating a fact—which does not tend to the prejudice of the accused, is immaterial. Rev. St. § 1025 (U. S. Comp. St. 1901, p. 720)."

[9] A bill of particulars cannot make an indictment valid which fails to state an essential element of the offense, when objection is made at the proper time and in the proper manner. But in Morris v. United States, 161 Fed. 672, at page 681, 88 C. C. A. 532, at page 541, the court said:

"So it might well be said by a defendant, charged in general terms with carrying on the business of a manufacturer, that it does not reasonably advise him in advance as to which of said statutes it was the purpose of the prosecutor to invoke. This question could not be raised in advance by demurrer, as the indictment on its face would be good under section 4 of the original statute. The clear course for the defendant in such situation to pursue, for his proper protection against unpreparedness and surprise, is by timely motion to compel the prosecutor to furnish him with a bill of particulars. This was aptly and comprehensively expressed by Judge Van Devanter in Rinker v. United States, 151 Fed. 759, 81 C. C. A. 383, as follows:

" 'When an indictment sets forth the facts constituting the essential elements of the offense with such certainty that it cannot be pronounced ill upon motion to quash or demurrer, and yet is couched in such language that the accused is liable to be surprised by the production of evidence for which he is unprepared, he should in advance of the trial apply for a bill of the particulars; otherwise, it may properly be assumed as against him that he is fully informed of the process of the case which he must meet upon the trial.' "

Such was the course pursued by the defendants in this case. They demanded a bill of particulars under the first count, and this was furnished by the district attorney under the order of the court. The facts set out in the bill of particulars stated all of the details which were omitted in the indictment. There can be no doubt but that the defendants went to trial fully advised of the nature and cause of the accusation against them, and were in no way prejudiced by the want of particularity in the statement in the indictment of the details of the offense. In Connors v. United States, 158 U. S. 408, on page 411, 15 Sup. Ct. 951, on page 952 (39 L. Ed. 1033), the court said:

"Nor, if made by demurrer or by motion and overruled, would it avail on error unless it appeared that the substantial rights of the accused were prejudiced by the refusal of the court to require a more restricted or specific statement of the particular mode in which the offense charged was committed. Rev. Stat. § 1025. There is no ground whatever to suppose that the accused was taken by surprise in the progress of the trial, or that he was in doubt as to what was the precise offense with which he was charged."

In Armour Packing Co. v. United States, 209 U. S. 56, on page 84, 28 Sup. Ct. 428, on page 436 (52 L. Ed. 681), the court said:

"In the present case no objection was made to the indictment until after verdict by motion in arrest of judgment.

"Had it been made by demurrer or motion and overruled it would not avail the defendant, in error proceedings, unless it appeared that the substantial rights of the accused were prejudiced by the refusal to require a more specific statement of the particular mode in which the offense charged was committed. See Rev. Stat. U. S. § 125; Connors v. United States, 158 U. S. 408, 411 [15 Sup. Ct. 951, 39 L. Ed. 1033]."

[10] The court refused to submit to the jury a regulation of the Internal Revenue Department, which, as the defendants claimed, gives a person engaged in the oleomargarine business the whole of the calendar month in which to make payment. When most favorably construed for the defendants, all that can be claimed for this regulation is that it gives to a manufacturer or a wholesale or retail dealer who commences his business on any day of the month the whole of that month within which to pay the yearly license, although we do not say that this would be the right construction. The tax of 10 cents a pound upon colored oleomargarine is paid by stamps. There is nothing in this regulation to indicate that the seller of colored oleomargarine has until the end of the month in which to pay this stamp tax on oleomargarine which he has already removed or sold. This count in the indictment is based upon section 17, which does not relate to such license taxes. The regulation therefore had nothing to do with the case.

[11] The defendants' eighth request was in effect given by the court when it said to the jury that section 17 provided that oleomargarine so produced by coloration, when removed for consumption or sale, would be subject to the tax of 10 cents a pound.

We find nothing in the charge to support the claim of the defendants that the judge gave the jury to understand that, if they found that any wrongful and criminal acts were being done when the arrests were made, they might infer therefrom that like acts had been done before.

[12, 13] When the officers went to the place of business of the defendants on October 29, 1910, they had a search warrant. They seized various articles which they found upon the premises, and also some letters and other papers. Two promissory notes signed by the defendant May thus found were introduced in evidence to show his connection with the business. It is claimed by him that his constitutional right to be free from unlawful searches and seizures was violated, and that he was compelled in this way to give evidence against himself. There is nothing in this claim. Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575; Ripper v. U. S., 178 Fed. 24, 101 C. C. A. 152. The conviction upon the first count must be sustained.

[14] The defendants were tried and convicted upon another count. This charges a violation of the same section 17, and the same evidence and the same acts were relied upon to convict the defendants on this count as in the first count. This seems to have

been the view taken by the judge below, for he said at the end of his charge:

"I will simply say this to the jury, that the matter is so presented to the court that the two counts really constitute but one offense. That is to say, that whatever may be the form of the verdict of the jury the court will impose but one sentence if the verdict be guilty. But that need not affect your deliberation as to whether you believe there is guilt or innocence on each of the counts."

Under these circumstances, the conviction under the second count cannot be sustained.

The judgment of the court below is affirmed upon the first count of the indictment, and reversed upon the second.

SANBORN, Circuit Judge (dissenting). The only charge in the first count of the indictment in this case is that at times and at a place named the defendants were manufacturing oleomargarine and did "defraud, and attempt to defraud, the United States of America of the tax provided by law and required to be paid on the oleomargarine produced by them." It contains no averment of any of the facts which constitute the·fraud, or the attempt to defraud.

A bill of particulars does not remedy the defect of an indictment, as the majority remark, which fails to set forth the essential elements, the material facts that are claimed to constitute the alleged offense. United States v. Tubbs (D. C.) 94 Fed. 356, 360; Floren v. United States, 186 Fed. 961, 964, 108 C. C. A. 577.

"It is an elementary principle of criminal pleading that, where the definition of an offense, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition, but it must state the species— it must descend to particulars.' 1 Arch. Cr. Pr. & Pl. 291. The object of the indictment is: First, to furnish the accused with such a description of the charge against him as will enable him to make his defense and avail himself of his conviction or acquittal for protection against further prosecution for the same cause; and, second, to inform the court of the facts alleged so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place and circumstances." United States v. Cruikshank, 92 U. S. 542, 558 (23 L. Ed. 588).

And because fraud and attempt to defraud are generic terms, because a fraud, and likewise an attempt to defraud, is a conclusion of law made up of acts and intent, and because the facts which are claimed to constitute either of them, and not a mere conclusion of law, must be set forth in the indictment which charges the offense with such reasonable particularity as will enable the court to decide whether or not they are sufficient in law to support a conviction, as will enable the defendants to know what is charged against them and to prepare their defense, and as will protect them from another prosecution for the same offense, and the first count of this indictment utterly fails, in my opinion, to set forth the facts, the essential elements which constitute either the alleged fraud,

or the alleged attempt to defraud, it seems to me that this count of the indictment was demurrable and voidable in the face of a motion in arrest of judgment. The reasons for this conclusion are stated more at length in the dissenting opinion in Fred D. May et al. v. United States, which presented a similar question, and I refrain from repeating them here. I think the judgment below should be reversed.