**HENLOPEN HOTEL CORPORATION, a Delaware corporation, also known as Hotel Henlopen, Inc., Plaintiffs,**

v.

**AETNA INSURANCE COMPANY, a Connecticut corporation, et al., Defendants.**

**HENLOPEN HOTEL CORPORATION, a Delaware corporation, also known as Hotel Henlopen, Inc., and Lake Gerar Hotel Corporation, a Delaware corporation, Plaintiffs,**

v.

**AMERICAN INSURANCE COMPANY, a New Jersey corporation, and Agricultural Insurance Company, a New York corporation, Defendants.**

Civ. A. Nos. 2503, 2529.

United States District Court
D. Delaware.

Nov. 23, 1964.

See also D.C., 33 F.R.D. 306.

Daniel L. Herrmann and Samuel R. Russell, Jr., of Herrmann, Bayard, Brill & Russell, Wilmington, Del., for plaintiffs.

William Prickett, Jr., of Prickett & Prickett, Wilmington, Del., for defendants.

LAYTON, District Judge.

At the outset of the trial, plaintiffs' attorney moved that the jury panel be quashed because of failure to comply with the provisions and requirements of

Title 28, § 1865 U.S.C.A.[1] The motion was denied and exceptions taken.

The grounds alleged were (1) that no order of this Court had ever been entered directing the manner in which jurors should be selected as provided by § 1865 and (2) that, of the entire jury panel of some 600 names from which the present panel was drawn, but 43 jurors resided in Sussex County. Such a geographical disproportion among jurors, plaintiffs argue, does not lend itself to an impartial trial, particularly in view of the fact that this cause of action originated in Sussex County, Delaware, was filed in the Superior Court of the State of Delaware in and for that County, and later removed to this Court.

From the testimony of the Jury Commissioner and the Clerk of this Court, the following facts are found:

## FINDINGS OF FACT

(1) The Jury Commissioner[2] of this Court makes lists of prospective jurors for this Court from telephone and city directories, printed lists of business groups and societies, and from his own personal knowledge as well as inquiries made from social and business contacts through out the State. Such lists include a number of women and Negroes and are made up from all walks of life.[3]

(2) Standard, government questionnaires are sent to each prospective juror asking, among other things, whether they are willing and able to serve on juries.

(3) If no answer is received, no further effort is made to get in touch with or call such person for jury service.

(4) The names of those prospective jurors who reply to the questionnaire, and who are otherwise qualified, are placed in a drum or wheel and such names are replenished or supplemented from time to time. Names from this wheel or drum are drawn from time to time by the Clerk for service on panels of jurors as required.

(5) While the large majority of the names placed in the wheel are from New Castle County, it being by far the largest county in population and the seat of the only Federal Court House in this District, a number of names of jurors from the two lower counties are always maintained therein.

(6) The Jury Commissioner is constantly aware of the necessity of maintaining in the wheel names of jurors from the two lower counties.

(7) Judges of this Court have on more than one occasion assisted the Jury Commissioner in the suggestion of names of persons from Sussex County who might make good prospective jurors.

(8) It is difficult to get persons from Sussex County to serve on Federal Court juries for a number of reasons.

(a) There is no regular bus or train service between the two counties;

(b) The northern line of Sussex County is 65 miles from the seat of the Federal Court in Wilmington, and the southern line of Sussex County, 100 miles therefrom;

(c) Jurors have to depend on automobiles to go back and forth;

(d) A substantial number of residents of Sussex County are farmers who, at certain times of the year, find it impossible to maintain their farms if they serve on juries. Also, there are a large number of small business-

---

1. " * * * jurors shall from time to time be selected from such parts of the district as the court *directs* so as to be most favorable to an *impartial* trial, and not to incur unnecessary expense or unduly burden the citizens of any part of the district with jury service. To this end the court may direct the maintenance of separate jury boxes for some or all of the places for holding court in the district and may appoint a jury commissioner for each such place." (Emphasis added.)

2. Wherever "Jury Commissioner" appears, "Jury Commissioner and Clerk" is intended.

3. This Court takes judicial notice of the fact that a number of women and Negroes are constantly represented on our juries.

men who find it difficult to leave their businesses for any period of time;

(e) During the winter months with the likelihood of snow or ice on the roads, it is difficult at times to drive back and forth between the two counties;

(f) The subsistence fee is only $7.00 per day, and a juror having to spend the night in Wilmington is unable to subsist decently on that allowance.

(9) Nevertheless, a number of prospective jurors from a fair cross section of society including farmers, small business men, etc., in Sussex County have served, and continue to serve on juries in this Court.

(10) No order of this Court has ever directed the Commissioner as to how to select jurors for this Court in accordance with Title 28, § 1865, U.S.C.A., but for many years in the past, juries have been selected as outlined in the earlier Findings of Fact, and Judges of this Court maintain close contact with the Jury Commissioner and are not only familiar with the method of selection of juries but also discuss problems surrounding the selection of juries from time to time with said Commissioner.

(11) As of the date the jury panel was selected for the trial of the above-entitled case, about 570 names existed in said drum or wheel, a few of which had been there many years.

(12) About 450 names had been selected within the past two years, and of the 450, 255 names had been selected during this calendar year. About 120 names had been in the wheel prior to 1963.

(13) As of September 1964, 100 questionnaires had been sent to jurors in Kent and Sussex Counties, and of those who had replied, 11 names had been added to said wheel.

(14) As of the time of drawing this most recent jury panel, about 519 names from New Castle County remained in said wheel, 8 names from Kent County, and 43 names from Sussex County.

(15) Of these 43 names from Sussex County, 2 jurors from Sussex County were on the panel summoned for the trial of the above-entitled case.

■ As to the first point, no case has been cited, nor does research disclose, any authority requiring that a Federal District Court enter an order pursuant to 28 U.S.C.A. § 1865. Indeed, the authorities are to the contrary. Compare United States v. Gottfried, 165 F.2d 360 (C.A.2d 1948). Concededly, in May v. United States, 199 F. 53 (59) (C.A.8th 1912),[4] the Court stated that in the absence of an order of the Court dividing the District, it would be assumed that "* * * drawing them from the whole district will be most favorable to an impartial trial * * *." Id. at 59. But in this District, jurors are drawn from the entire District so that May is no authority for plaintiffs' position. In my view, whether or not a particular district draws its jurors in conformity with 28 U.S.C.A. § 1865 depends upon the manner in which they are drawn, not the existence or non-existence of a Court direction, or order.

■ Nor, in my judgment, is the method by which jurors are drawn in this District offensive to principles laid down by the United States Supreme Court in Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946), where, at page 220 of 328 U.S., at page 985–986 of 66 S.Ct., it was said:

"The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84; Glasser v. United States, 315 U.S. 60, 85, 62 S.Ct. 457, 471, 86 L.Ed.

---

4. In May v. United States, it also appeared that no order of the District Court had ever been entered pursuant to 28 U.S. C.A. § 1865.

680. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury.

"The choice of the means by which unlawful distinctions and discriminations are to be avoided rests largely in the sound discretion of the trial courts and their officers. This discretion, of course, must be guided by pertinent statutory provisions. So far as federal jurors are concerned, they must be chosen 'without reference to party affiliations,' 28 U.S.C. § 412; and citizens cannot be disqualified 'on account of race, color, or previous condition of servitude,' 28 U.S.C. § 415. In addition, jurors must be returned from such parts of the district as the court may direct 'so as to be most favorable to an impartial trial, and so as not to incur any unnecessary expense, or unduly burden the citizens of any part of the district with such service,' 28 U.S.C. § 413 * * * *" 5

See also Dow v. Carnegie-Illinois Steel Corp., 224 F.2d 414 (C.A.3rd 1955).

In the District of Delaware, the Federal Court sits in only one place, Wilmington, which is in the extreme northerly part of the State. For this reason, it is not feasible to enter an order directing the division of the District as contemplated by Section 1865. This, in turn, poses a difficult question with respect to the manner in which jurors should be drawn from the southern part of the State, particularly Sussex County, which is many miles away and accessible only by road.

■ I find unpersuasive plaintiffs' argument that inasmuch as this cause of action arose in Sussex County, was originally filed in the Superior Court of Delaware for that County and subsequently removed here, a proper interpretation of the word "impartial" appearing in Section 1865 requires a substantially larger representation of jurors from that County on the Federal jury panel than present in this case. Thiel refutes this argument, at least by implication, and when it is remembered that, in theory, if not in practice, the very purpose of the removal statute is to enable the defendant to submit his cause to a forum free from local prejudice and passion, the reasoning underlying plaintiffs' argument disappears.

Reading Section 1865 in the light of the geography of this District, it is my opinion that the practice in seeing that names of jurors from the two lower counties are always present in the wheel or drum, even though not in proportion to their populations vis-a-vis New Castle County, not only meets the test laid down in Thiel, but also, as is obviously intended by that Section, results in casting no disproportionate burden upon the citizens of the more distant parts of the District.

Accordingly, it is my conclusion that the motion to quash the jury panel should be denied.

---

5. As stated elsewhere, I do not interpret this language as making it mandatory for a Court to enter an order under the present § 1865.