ROBERTS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 11, 1918. Rehearing Denied April 1, 1918.)

No. 3029.

1. CRIMINAL LAW ☞1177—SENTENCE—EFFECT OF PARTLY ERRONEOUS SEN-TENCE.

That through a clerical error a defendant was sentenced on each of eight counts of the indictment, although two of the counts had been withdrawn from the jury, was not prejudicial to the defendant, it is not ground for reversal when the punishment imposed was not greater than might have been imposed on any one of the counts.

2. CONSPIRACY ☞43(8)—EXTORTION BY INFORMER—SUFFICIENCY OF INDICT-MENT.

An indictment for conspiracy to violate Criminal Code (Act March 4, 1909, c. 321) § 145, 35 Stat. 1114 (Comp. St. 1916, § 10315), which makes it a criminal offense if any one shall "under threat of informing, or as a consideration for not informing, against any violation of any law of the United States," etc., it is not necessary to aver that the person threatened had in fact violated any law of the United States. Such an indictment also held to sufficiently describe the offense charged, in the absence of any motion for a bill of particulars.

3. CONSPIRACY ☞43(9)—SUFFICIENCY—PERSONATING UNITED STATES OFFICER.

Under Criminal Code, § 32 (Comp. St. 1916, § 10196), which makes it a crime if any person, "with intent to defraud either the United States or any person, shall falsely assume or pretend to be an officer or employé acting under the authority of the United States, or any department, or any officer of the government thereof, and shall take upon himself to act as such, or shall in such pretended character demand or obtain

from any person, or from the United States, * * * any money," etc., the substance of the offense is the false assumption of federal authority when accompanied with fraudulent intent, and an indictment thereunder need not allege that defendant pretended to be any particular officer or agent of the United States, but it is sufficient to charge that he claimed authority thereunder.

4. CONSPIRACY ☞44½—CRIMINAL PROSECUTION—VARIANCE.
Where an indictment for conspiracy avers that defendant conspired with persons, to the grand jury unknown, and there is no evidence to the contrary, the truth of the averment of want of knowledge by the grand jury will be presumed.

5. CRIMINAL LAW ☞423(1)—CRIMINAL PROSECUTION—EVIDENCE.
Where a person enters into a conspiracy after its formation, the acts and declarations of the other conspirators before he entered are admissible in evidence against him.

6. CRIMINAL LAW ☞1170(1)—CRIMINAL PROSECUTION—TRIAL.
The exclusion of evidence offered by defendant on trial for conspiracy *held* not error.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington.

Criminal prosecution by the United States against John W. Roberts. Judgment of conviction, and defendant brings error. Affirmed.

The plaintiff in error was indicted jointly with one Leo F. Coyne on September 8, 1916, in the United States District Court for the Western Division of Washington, Northern Division, for violation of sections 37, 32, and 145 of the Penal Code of the United States. The indictment contained eight counts. A motion to quash the indictment was denied, and demurrer thereto overruled. The case proceeded to trial of the plaintiff in error alone. The court withdrew counts 1 and 4 from the consideration of the jury, and the jury returned a separate verdict of guilty on each of the remaining six counts of the indictment. The judgment of the court, as it appears in the transcript of record before us, was that the defendant was guilty of violating sections 37 and 32 of the Penal Code of the United States, and that he be punished by being imprisoned for the term of 15 months on each of the eight counts. From the judgment entered thereon the plaintiff in error brings this writ of error.

Beeler & Sullivan, John J. Sullivan, and William R. Bell, all of Seattle, Wash., and Benjamin L. McKinley, of San Francisco, Cal., for plaintiff in error.

Clay Allen, U. S. Atty., of Seattle, Wash.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). It appears from the evidence that one Clifford Yarborough arrived in Seattle from Tennessee about February 28, 1916, with his illegitimate daughter, aged about 17 years, whose mother was a colored woman. He had attempted to legally adopt this daughter in Indiana, but adoption had been refused by the courts. He came to Seattle a stranger, intending to locate in that locality with his daughter, and brought with him about $7,500 in gold for investment. He procured lodgings in an inferior part of the city, consisting of one room with a small kitchen behind. A bed and separate cot were provided, and father and daughter remained in those quarters for about a week, then removing to a better locality and occupying two rooms.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The second day after arriving in Seattle Yarborough made a chance acquaintance with a man named Moore, to whom he disclosed the fact that he was a stranger with money to invest, but desired to go to work for awhile and get acquainted in the community before investing permanently; also, that he had a young daughter with him. Moore related the conversation and meeting with Yarborough to one Lonigan, who lived in the same boarding house with Moore, and Lonigan expressed a desire to meet Yarborough, to see if he could not interest him in some business enterprise. Moore and Lonigan called upon Yarborough at the first-named lodging house, and later they met the defendant Coyne in the lobby of a hotel. The latter, having an appointment elsewhere, invited them to walk with him along the street. The invitation was accepted, and Lonigan told Coyne about Yarborough, and asked him if he had something he could sell him, or some proposition to put up to him. Coyne said at once that he could very easily interest him in many propositions. He said he could sell him a ranch, a livery stable, or put him in the hay and grain business, or sell him a bunch of horses. He said it would be very easy to stick a man like this, and that, if he could not get the money that way, he could get it some other way. He then inquired the particulars about Yarborough's daughter, and proposed to take Moore and Lonigan to the defendant Roberts, who, it appears, was operating a private detective business in Seattle. Moore told Lonigan and Coyne, that, as far as anything like that was concerned, they could count him absolutely out.

A few days afterwards Moore and Lonigan had some further conversation concerning the Yarboroughs, when Lonigan said he would like to see Yarborough about the original proposition of going into the hay and grain business. They accordingly visited Yarborough's apartment and saw the daughter, but Yarborough was out at the time, and they did not see him then, and they did not see either of them again. At this point both Moore and Lonigan disappear from the case. At about this same point of time Coyne tells the defendants Roberts about Yarborough; tells him where the latter is stopping, and that he has a very young girl with him. Roberts proceeds to the place where Yarborough had been stopping, and claims to have received from the lady of the house information tending to show that there were improper relations existing between the Yarboroughs. Roberts was referred to their new address. He returned to his office, and then with Coyne called on the Yarboroughs.

There is evidence tending to show that Roberts and Coyne represented themselves to Yarborough and his daughter as government officers, and stated that he had violated the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [Comp. St. 1916, §§ 8812–8819]) in every state he had passed through with the girl; that it was not believed that she was his daughter, and that he was under arrest; that Yarborough insisted that the girl was his daughter, and that he was not guilty of any wrongdoing; that the defendants maintained their attitude, and Yarborough finally asked if he could not give bail, showing his bank book, with a deposit noted of over $7,500, and asking per-

mission to wire his attorney in Tennessee; that Roberts and Coyne told him he could not give bail; that it was not necessary to wire an attorney; that he would be held for the federal grand jury, which would not meet for six or eight months; that after considerable discussion it was suggested that possibly bail could be received, and it could be arranged on the Monday following, this interview taking place on Saturday evening; that the suggestion was made by Roberts that, if Coyne was willing to remain with Yarborough and watch him, possibly arrest need not be made at that time; that Yarborough consented to this arrangement, and upon the suggestion of Coyne and Roberts that there would be more privacy in a hotel, the belongings of Yarborough and his daughter were hurriedly packed in trunks, and they, with the defendant Coyne, then went in an automobile to the Hotel Perry in Seattle, and took a suite of rooms which Coyne arranged for, composed of three rooms with a private hallway, with only one entrance into the main hallway; that the defendants Coyne and Roberts remained with Yarborough and his daughter, either alternately or together, continuously from Saturday evening to Monday following, during which time it was pretended that they desired to befriend Yarborough and his daughter, even though it would render them liable for neglect of official duty, and it was suggested that if Yarborough would send his daughter back to her mother in Indiana or Tennessee, and would himself leave the country for a year, they would not arrest him, and the matter would blow over in the meantime, and, if he saw fit to compensate the defendants for their assistance, he could do so; that on Monday the defendants went with Yarborough to the bank, and were with him when he withdrew all his money therefrom; that they returned with him to the hotel and arranged that $2,000 should be left with the defendant Roberts, to be placed by him at interest, and that said sum was then and there paid over to the defendants; that Coyne and Yarborough went to another bank and deposited $500, to be sent to Indiana in stipulated payments for the care of the daughter, and that on that night the daughter was sent on her journey to Indiana, the defendants accompanying her and Yarborough to the depot; that the defendant Roberts left Yarborough and Coyne after the departure of the daughter, but that Coyne remained with Yarborough until he was on board a boat sailing for British Columbia that night, in charge of one Collins, selected by Coyne to guard Yarborough; that Yarborough eluded his guard in British Columbia, and went back East.

[1] 1. The indictment contained eight counts. Upon the trial of the case and at the conclusion of the evidence the court withdrew counts 1 and 4 from the consideration of the jury, leaving the charges contained in counts 2, 3, 5, 6, 7, and 8 for their consideration. The jury rendered a verdict of guilty on each and all of the six counts. The court, in its judgment as it appears in the transcript of record before us, imposed a punishment of 15 months' imprisonment on each of the eight counts, to run concurrently. It is manifest that the recital that the judgment is on each of the eight counts is a clerical error. The verdict was only on six counts, and only six counts were

before the court at the time of the sentence. The judgment must therefore have been on the six counts, instead of on the eight counts; and as the maximum penalty that might be imposed by the court upon each of the counts 2 and 8 was a fine of not more than $10,000, or imprisonment for not more than 2 years, or both, and the maximum penalty that might be imposed by the court upon each of the counts 3, 4, 5, 6, and 7, is a fine of not more than $1,000, or imprisonment for not more than 3 years, or both, it follows that the imprisonment of 15 months on each of the counts was within the penalty that might have been imposed on each of the counts, and, as the imprisonment on each count was to run concurrently with each of the others, the judgment was in effect a judgment upon a single count. The defendant will not be prejudiced, therefore, by reading the judgment as upon six counts, and it will be held that such were its terms.

2. The assignments of error charge insufficiency of the indictment, insufficiency of the evidence to sustain the verdict and judgment, and errors in the admission and rejection of evidence.

[2] Section 145 of the Penal Code provides that:

"Whoever shall, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demand or receive any money or other valuable thing, shall be fined," etc.

The second count charges the defendant with having conspired to violate this section of the Penal Code. It is objected to the sufficiency of this count that it fails to allege that Yarborough had violated the White Slave Act, or any other law of the United States, or that the defendant had reasonable grounds for believing, or did believe, that Yarborough had violated the act. In other words, the contention is that it must be alleged and proven that Yarborough had violated the White Slave Act, or that the defendant had reasonable ground to believe or did believe he had violated the act, and, unless one or the other of these elements is alleged and proven, the defendant cannot be convicted of the crime charged against him. If this construction of the statute be adopted, it would lead to the absurd result that the statute would defeat itself. It is doubtful whether any convictions could be had under it, if it were so construed. The purpose of the statute is clearly to make it an offense for any person to demand or receive money or other valuable thing for threatening to inform, or as a consideration for not informing, against any violation of any law of the United States. It has been held that it is not necessary to state what particular law has been violated by the person threatened (United States v. Fero [D. C.] 18 Fed. 901, 904); and surely, if it is not necessary to state what particular law has been violated by the person threatened, it is not necessary to allege and prove that the victim has actually violated a particular law of the United States. Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion. Church of the Holy Trinity v. United States, 143 U. S. 457, 460, 12 Sup. Ct. 511, 36 L. Ed. 226; Henderson v. Mayor of New York, 92 U. S. 259, 268, 23 L. Ed. 543; United States v. Kirby, 7 Wall. 482, 486, 19 L. Ed. 278; Oates v.

National Bank, 100 U. S. 239, 244, 25 L. Ed. 580; Lau Ow Ben v. United States, 144 U. S. 47, 59, 12 Sup. Ct. 517, 36 L. Ed. 340; United States v. Corbett, 215 U. S. 233, 242, 30 Sup. Ct. 81, 54 L. Ed. 173; Pickett v. United States, 216 U. S. 456, 461, 30 Sup. Ct. 265, 54 L. Ed. 566.

There is also the further objection to the sufficiency of the second count that it does not inform the defendant of all the necessary elements of the charge against him, so that he might properly prepare his defense. The offense is charged in the language of the statute, with the added detail that the defendants charged Yarborough with having violated the White Slave Act. The defendants are also charged with having committed 14 separate and distinct overt acts to effect the object of the conspiracy. We are of opinion that the count sufficiently states the material circumstances of the offense. It clearly charges the illegal act complained of; that is to say, the conspiracy to commit an offense against the United States, and the requisite fraudulent intent—states the date and place of the commission of the act charged, and the statutory offense which the defendants charged Yarborough with having committed, and the demand for money under a threat of informing, and as a consideration for not informing, against him. There is no suggestion that there was a want of knowledge of the crime charged against the defendants, or of any surprise concerning the same upon the trial of the case. Nor is there any intimation that any request was made for a bill of particulars concerning the details of the offense charged. We must therefore hold that the count sufficiently charges the crime of which the defendant was convicted. Lamar v. United States, 241 U. S. 103, 116, 36 Sup. Ct. 535, 60 L. Ed. 912; section 1025 of the Revised Statutes; Connors v. United States, 158 U. S. 408, 411, 15 Sup. Ct. 951, 39 L. Ed. 1033; Armour Packing Co. v. United States, 209 U. S. 56, 84, 28 Sup. Ct. 428, 52 L. Ed. 681; N. Y. Cent. R. R. Co. v. United States, 212 U. S. 481, 497, 29 Sup. Ct. 304, 53 L. Ed. 613; Holmgren v. United States, 217 U. S. 509, 523, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778.

The eighth count of the indictment also charges the defendants with a conspiracy to commit an offense charged against the United States, to wit, to violate section 32 of the Penal Code of the United States, the purpose and effect of which was to falsely assume and pretend to be officers of the United States authorized to make arrests in criminal cases under the laws of the United States, and in such pretended character to demand and obtain from Yarborough money and other valuable things. To this charge there is added the detail that the offense charged against Yarborough was his violation of the White Slave Act, and the defendants are also charged with 13 specific overt acts to effect the object of the conspiracy. The same considerations for holding the second count sufficient require us to hold the eighth count sufficient.

[3] 3. The third, fifth, sixth, and seventh counts charge the defendants with intent to defraud Yarborough by falsely assuming and pretending to be officers acting under the authority of the United States. In count 3 they are charged with having assumed and pretended to

be officers and special agents of the Department of Justice, charged with the duty and authority of enforcing the penal laws of the United States, particularly the White Slave Act. In count 5 they are charged with assuming and pretending to be officers acting under the authority of the United States authorized to make arrests in criminal cases. In count 6 they are charged with having assumed and pretended to be officers acting under the authority of the United States, and charged with the duty and authority of enforcing the penal laws of the United States, particularly the White Slave Act. In count 7 they are charged with having assumed and pretended to be officers acting under the authority of the United States authorized to make arrests in criminal cases.

In United States v. Barnow, 239 U. S. 74, 78, 36 Sup. Ct. 19, 60 L. Ed. 155, the defendant was charged, as in these counts, with the violation of section 32 of the Penal Code. The indictment in that case contained six counts. The specific charge in each of the counts was that the defendant falsely assumed to be in the employ of the United States, acting under the authority of the United States, to wit, an agent employed by the government to sell a certain set of books entitled "Messages and Papers of Presidents." It was admitted that there was not in existence such an employé or such an employment as it was alleged the defendant pretended. The Supreme Court held that the mischief to be cured was the false pretense of federal authority when accompanied with fraudulent intent, and it was pertinently suggested that such a pretense would rarely be made for benevolent purposes. It was further held that the prohibition of the statute was not confined to the false personation of some particular person or class of persons, but extended to any false assumption or pretense of office or employment under any department or officer of the government, if done with an intent to defraud, and accompanied with any of the specific acts done in the pretended character. Under this construction of the statute the six counts before us are clearly sufficient, and they are sufficient under the rule stated in Lamar v. United States, supra, in alleging with the other particulars there mentioned the official character of the officer whom the accused were charged with having falsely personated.

[4] 4. Under the objection that the evidence is insufficient to sustain the verdict and judgment, it is contended that the court should have instructed the jury to acquit the defendants on counts 2 and 8— the conspiracy counts—because the defendants are charged to have conspired "with divers and sundry other persons to the said grand jurors unknown." It is claimed that Moore and Lonigan and Collins were coconspirators, and that this fact was known to the grand jury, and that they should have been so charged in the two counts of the indictment; that this omission constitutes a fatal variance between the allegations of the counts of the indictment and the proof.

In Coffin v. United States, 156 U. S. 432, 451, 15 Sup. Ct. 394, 39 L. Ed. 481, it was held that where there is an averment that a person or matter is unknown to the grand jury, and no evidence upon that subject is offered by either side, and nothing appears to the contrary;

the truth of the averment or want of knowledge in the grand jury is presumed. The evidence taken upon the trial in this case is not all in the transcript of the record before us, but a careful examination of the evidence in the record does not in our opinion show that either Moore, Lonigan, or Collins were coconspirators. The recital of what the evidence tends to show, heretofore made in this opinion, was made in part to present all there is in this question, and in our opinion it fails to show that Moore, Lonigan, or Collins were coconspirators to do any act made criminal by the statute, but tends rather to show that they were not. The only circumstance tending to a different conclusion with respect to Lonigan is contained in the opening of the United States attorney, who, in making a general statement of the facts he expected to prove, said:

"By the way, I should say at this time that his honor will instruct you that, where the indictment in a given case charges that certain defendants conspired together and with each other and with divers other persons unknown to the grand jurors, you will consider the relations of those unknown persons in the case, and Lonigan in this instance is one of those unknown persons."

This statement is not evidence. The United States attorney says it was inadvertently made, and we think it so appears from the evidence in the case. In any event, there is nothing in the record showing the evidence presented to the grand jury upon this subject, and their want of knowledge that Moore and Lonigan and Collins were coconspirators will be presumed.

5. The general objection, that the evidence was not sufficient to support the verdict and judgment, must be overruled. There was evidence, as before stated, tending to show that the defendant Roberts represented himself to the Yarboroughs as a government officer, and that he accused Yarborough of having violated the White Slave Act. Further, it appears that Roberts participated with Coyne in practically imprisoning the Yarboroughs in their rooms at the hotel, and in their deportation from Seattle. The suggestion of the Supreme Court in United States v. Barnow, supra, that pretenses of this character would rarely be made for benevolent purposes, is applicable here. The jury had the right to draw the conclusion from the facts proven that the defendant was guilty as charged.

[5] 6. We do not find that the admission of evidence relating to matters that occurred prior to Roberts' connection with the case was in any way prejudicial to the defendant Roberts. This evidence was purely introductory, and was only significant in the light of the testimony relating to the proceedings in which the defendant Roberts afterwards participated. Besides, the evidence was admissible under the familiar rule that, where a person enters into a conspiracy after its formation, the acts and declarations of the other conspirators before he entered are admissible against him. This rule is, of course, only applicable where he adopts the conspiracy in its original design and purpose, and this the evidence in this case tended to show the defendant Roberts did. 12 Cyc. 438. It is not our province to weigh this evidence.

[6] 7. It is assigned as error that the court refused to admit certain testimony offered by the defendant on the trial of the case. We

have examined the record carefully, and do not find any error in the ruling of the court with respect to the matters referred to. It appears that Yarborough signed a written statement on May 24, 1916, concerning the facts in this case, for the information of some government officer. It is claimed that in this statement Yarborough did not say that Roberts had represented himself to be an officer of the government. When the witness Yarborough was on the stand for the government, he was interrogated by counsel for the defendant about this statement, and he then said he did not remember what he had stated on that subject. Counsel for the defense called upon the United States attorney for this written statement, which was refused. It appears that counsel for the defense had an exact copy of this statement in his possession at that time, and it was upon that statement that he conducted the cross-examination of Yarborough, for the purpose of showing a contradiction. As the statement had no other value, and was not used for any other purpose, the defendant was not prejudiced because he did not obtain possession of the statement in the possession of the United States attorney.

The refusal of the court to allow the witness Collins to testify as to how much money Coyne subsequently spent on a trip to El Paso, Tex., is assigned as error. It is claimed by counsel for the defendant that this money was a considerable sum, and was expended in paying the expenses of Coyne, the witness, and two women on this trip; that this money may have been received from Yarborough, and, if so, the jury, if it knew the particulars, could draw the conclusion that Roberts did not have anything to do with it. We are of opinion that this evidence was too remote, indefinite, and uncertain, and was properly excluded.

Finding no reversible error in the record, the judgment is affirmed.