---

## FARKAS v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. December 13, 1924.)

No. 4047.

**1. Criminal law &#9740;1175—Informality of verdict on counts on which defendant not convicted is immaterial.**

Informality of verdict on counts as to which jury disagreed is immaterial.

**2. Threats &#9740;5—Indictment for withholding for a consideration information as to law violation held sufficient.**

Though Criminal Code, § 145 (Comp. St. § 10315), defining offense of obtaining money under threat of informing or as consideration for not informing against any violation of law, does not specify from whom such information is to be withheld, an indictment, charging information of violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) was withheld from the "proper prohibition enforcement officer of the United States," is sufficient.

**3. Threats &#9740;8—Error not to direct verdict as to transaction involving only state officers and violation of state laws.**

In prosecution under Criminal Code, § 145 (Comp. St. § 10315), for receiving money under threat of informing or as consideration for not informing against another as violator of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), where evidence did not indicate that information was withheld from any federal officer, but indicated that state officer and violation of state laws were involved, it was error not to direct verdict.

**4. Threats &#9740;7—Evidence held to sustain conviction for receiving money under threat of informing, or as consideration for not informing, of law violation.**

Evidence held to sustain conviction under Criminal Code, § 145 (Comp. St. § 10315), for

receipt of money under threat of informing, or as consideration for not informing, against another as violator of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

**5. Threats ⊛—1(1)—Federal statute prohibiting receipt of money as consideration for not informing against law violation held to include also contemplated violations.**

Criminal Code, § 145 (Comp. St. § 10315), defining offense of receiving money under threat of informing, or as consideration for not informing, of "any violation of any law of the United States," is not limited to past violations, and includes threat to inform of intended violations, and demand for money for "protection" implies such threat and offer not to inform.

**6. Criminal law ⊛—371(1)—Evidence of similar offenses admissible on issue of intent when other elements of crime charged have been proved.**

Evidence of similar offenses is admissible only as bearing on intent of defendant, where other elements of crime charged have been proved, and charge permitting jury to consider similar offenses as evidencing likelihood to commit all of acts essential to crime is improper.

**7. Criminal law ⊛—371(1)—Evidence of similar offenses in prosecution for receiving money as consideration for not informing of violations of law is inadmissible.**

Intent being not essential to offense of receiving money under threat of informing, or as consideration for not informing, against any violation of any law of United States defined by Criminal Code, § 145 (Comp. St. § 10315), evidence of similar offenses and different offenses relevant only on issue of intent is inadmissible.

**8. Witnesses ⊛—363(1)—Where verdict depends on credibility of witnesses, testimony showing bias and motive for false accusations is competent.**

Where verdict depends primarily on credibility of witnesses contradicting defendant, testimony showing motive for false accusations and bias affecting such credibility is relevant.

**9. Witnesses ⊛—363(1)—Promises of or hopes for immunity are admissible as affecting credibility.**

Promises of or hopes for immunity from prosecution made to witnesses are admissible as affecting their credibility.

**10. Witnesses ⊛—374(1)—Evidence held admissible affecting credibility of government's witnesses.**

Evidence, by cross-examination or otherwise that government witnesses hoped by their testimony to secure immunity or more favorable treatment in prosecutions pending against them, was admissible, though without any basis from act or word of the district attorney for such hope, and evidence that, though they had long since pleaded guilty, sentence had not been entered, was admissible as indicating existence of such hope or belief.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; Paul Jones, Judge.

Geza Farkas was convicted of receiving money under threat of informing, or as consideration for not informing, of viola-

tion of laws of United States, and he brings error. Reversed and remanded.

George P. Hahn, of Toledo, Ohio (Scott Stahl and John B. McMahon, both of Toledo, Ohio, on the brief), for plaintiff in error.

Geo. E. Reed, Asst. U. S. Atty., of Toledo, Ohio (A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, and George E. Reed, Asst. U. S. Atty., of Toledo, Ohio, on the brief), for the United States.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. Defendant was found guilty and sentenced cumulatively to one year's imprisonment and $1,000 fine, on each of the first and fifth of the ten counts in an indictment brought under section 145 of the Criminal Code (Comp. St. § 10315). The counts are identical, except that in the first four William Suto, in the fifth Mike Mincheff, and in the last five Steve Banyas, is named as the victim. In each count a different date of demand and receipt is alleged. The verdict as to each of the other counts reads,—"The defendant is disagree." The substance of count 1 and section 145 of the Criminal Code, on which the indictment was based, are copied in the footnote.[1]

[1] 1. The informality in the verdict as to all counts except 1 and 5 is immaterial. Clearly the purport of it is that the jury disagreed as to the guilt of the defendant on these counts.

[2] 2. While the act does not expressly specify to whom the information is to be given or from whom it is to be concealed, it is unnecessary to consider in this case whether or not it should be construed as requiring a federal official to be such person, because the indictment specifically charges that he was "a proper prohibition enforcement officer of the United States."

---

[1] Count 1, after the usual introduction, proceeds: "That Geza Farkas, * * * on or about the 8th day of November, 1922, at Toledo, * * * unlawfully * * * did demand, accept and receive * * * $50.00 * * * from one William Suto under a threat of informing and as a consideration for not informing against the said William Suto as a violator of a law of the United States, that is to say, for not reporting to the proper prohibition enforcement officer of the United States that said William Suto had violated * * * the National Prohibition Act."

Criminal Code, § 145, reads: "Whoever shall, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demand or receive any money or other valuable thing, shall be fined not more than two thousand dollars, or imprisoned not more than one year, or both."

[3] 3. There is no evidence, however, that, as to Mincheff any federal official was to be involved; on the contrary, the threats testified to specifically mentioned state officials, and apparently referred to violations not of federal but of state laws. There was error in not directing a verdict as to the fifth count.

4. The testimony established that defendant, a Hungarian by birth, who had acquired a legal education in Hungary and who called himself a Hungarian attorney, had obtained a position of prominence and influence, politically and otherwise, in the Hungarian community at Toledo, where for upwards of 15 years he had been engaged in the business of selling steamship tickets and foreign exchange to his countrymen; that he was accustomed to furnish bail and advance fines and costs imposed on them in criminal cases and to act therein as their interpreter; that he was well acquainted with local judges and officials; and that in that vicinity he had often represented the Consular Department of the Austro-Hungarian Empire and since the war the Hungarian government. It is conceded that he had dealings with William Suto; Suto had loaned him a considerable sum of money some years before the acts in question, for which, as well as for merchandise bought, defendant was still indebted to him. The testimony on behalf of the government in support of the first four counts is primarily that of William Suto, who, like most of the government witnesses, spoke through an interpreter. His testimony tends to show that defendant, on November, 1922, with knowledge that Suto had been, was and intended to continue violating the National Prohibition Act, demanded money of Suto, saying: "That he could protect him and make it sure that I would not be bothered if I paid him money. * * * That he will guarantee that nobody will bother us. * * * That he will fix it with the federal officers that I would not be bothered. * * * That if we would not pay that ($50 each for five of them) he would have us all locked up. * * * He would have us all put into federal court; that is, brought into federal court. * * * It ($50) was to be paid for protection against being raided by federal men. * * * That he would have us raided and caught if we were selling whisky. * * * We could go ahead and sell whisky without any fear of interference if we paid him that money. He also said that if we did not pay him, he would set Ray and Bach (city officers) on

us right away. * * * That he would have us all arrested if we did not pay. * * * That nobody, no officers would bother those that paid. * * * That he was on very good terms with Judge (naming a federal judge). * * * That he would fix it with" that judge and a commissioner whom the witness named.

On cross-examination he testified that he had been arrested and brought both to the state and federal courts and that he had continued to sell to his friends after his police court arrest because defendant "told him to go ahead and he would fix it up with the federal men, and he did fix it up with the federal men because I did not answer any charge in the federal court."

[4] This testimony, if believed, as it was, by the jury, suffices to establish that the dealings were in reference, in part at least, to violations of federal law and to action or nonaction of federal officers.

It is urged, however, that on this testimony, the demand for money was not under threat to inform or as a consideration for not informing as to the past violations but only for "protection," meaning thereby interference by officials with future violations. In our judgment, the testimony supports the contention that the money was demanded for "protection" against raids in the future and criminal proceedings that might otherwise be brought both for past and for future violations of both federal and state laws. "Protection," as used by this and other witnesses, involves, in our judgment, the not informing proper officials. It was for this, in part at least, that money was testified to have been demanded; in part, too, it was expressly testified to have been demanded under a threat so to inform.

[5] The language of the act is broad— "any violation of any law of the United States." In our judgment, this is not to be construed as limited to past violations; the evil sought to be guarded against is as serious, even though it be not perhaps as extensive, in the case of a contemplated future as of a completed past violation of law; and this, too, though such demand of money for action or nonaction, especially in relation to future violations, may be punishable under the conspiracy and other statutes. See Roberts v. U. S., 248 F. 873, 877, 160 C. C. A. 631 (C. C. A. 9); United States v. Fero (D. C.) 18 F. 901, 904.

If knowledge of either past or contemplated violations of a federal law has been acquired, the demand of payment for "pro-

tection," that is, for protection against its consequences necessarily, in our judgment, implies a threat to inform and an offer not to inform.

[6, 7] 5. Evidence of similar offenses is admissible as bearing upon the intent of a defendant and therefore upon the likelihood of a similar intent, in case the other elements of the crime charged should have been proven. The charge is susceptible of a somewhat broader interpretation, that is, as permitting the jury to consider similar offenses, not merely as bearing upon intent alone, but also as evidencing a likelihood to commit all of the acts essential to the crime. But in this case intent was not in issue. If the money demand was made under threat of informing or in consideration of not informing, no further specific intent is required. Therefore the entire evidence of similar offenses and, of course, of different offenses, should have been excluded. Crinnian v. U. S. (C. C. A.) 1 F.(2d) 643.

[8-10] 6. The prosecuting witnesses, before the time of the trial, had pleaded guilty to an indictment in the federal court; the verdict of guilt or innocence in the instant case depended primarily upon their credibility as against that of defendant who testified in denial of the demands and threats. As bearing upon their credibility, motive for false accusations, as well as bias, was vitally relevant, and testimony tending to show such motive was entirely competent. Concededly promises of immunity are admissible; they are, however, rarely made. Inasmuch as the question involved is the motive for testifying falsely and therefore the state of mind of the prosecuting witnesses, the relevant evidence is not alone the acts or attitude of the district attorney but anything else that would throw light upon the prosecuting witnesses' state of mind. It is therefore entirely proper, either by cross-examination of the witness himself, or otherwise, to show a belief or even only a hope on his part that he will secure immunity or a lighter sentence, or any other favorable treatment, in return for his testimony, and that, too, even if it be fully conceded that he had not the slightest basis from any act or word of the district attorney for such a belief or hope. The fact that despite a plea of guilty long since entered, the witness had not yet been sentenced, is proper evidence tending to show the existence of such hope or belief.

The trial judge, although at one time during the taking of testimony he had so ruled, later sustained the objection to similar testimony, and finally not only refused an instruction that the jury might consider the fact of the delayed sentence as bearing on such hope, but expressly instructed counsel that they must not argue the matter as affecting the motives of the witnesses.

In our judgment, this was such error as to compel a reversal in the instant case. Stevens v. People, 215 Ill. 601, 74 N. E. 786; State v. Kent, 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686.

7. Inasmuch as the case must be tried again, we deem it unnecessary to consider, in detail, other objections. We have noted certain highly prejudicial acts on the part of the district attorney, in continually bringing in material clearly irrelevant.

Reversed and remanded.