## CONNORS *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 512. Submitted January 21, 1895. — Decided May 20, 1895.

An indictment under Rev. Stat, § 5511, which charges that the accused, at the time named, did then and there unlawfully and with force and arms seize, carry away, and secrete the ballot box containing the ballots of a voting precinct which had been cast for representative in Congress, and did then and there knowingly aid and assist in the forcible and unlawful seizure, carrying away, and secreting of said ballot box, and did then and there counsel, advise, and procure divers other persons whose names were to the grand jury unknown, so to seize, carry away, and secrete said ballot box, charges but one offence, although it was within the discretion of the trial court, if a motion to that effect had been made, to compel the prosecutor to state whether he would proceed against the accused for having himself seized, carried away, and secreted the ballot box, or for having assisted or procured others to do so.

A suitable inquiry is permissible in order to ascertain whether a juror has any bias, to be conducted under the court and to be largely left to its sound discretion; and in this case there was no error in not allowing a juror to be asked, " Would your political affiliations or party predilections tend to bias your judgment in this case either for or against the defendant ? "

THE case is stated in the opinion.

*Mr. E. T. Wells* and *Mr. Mortimer F. Taylor* for plaintiff in error.

*Mr. Assistant Attorney General Conrad* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This was an indictment in the District Court of the United States for the District of Colorado under section 5511 of the Revised Statutes, providing : " If, at any election for Represen-

tative or Delegate in Congress, any person knowingly personates and votes, or attempts to vote, in the name of any other person, whether living, dead, or fictitious; or votes more than once at the same election for any candidate for the same office; or votes at a place where he may not be lawfully entitled to vote; or votes without having a lawful right to vote; or does any unlawful act to secure an opportunity to vote for himself, or any other person; or by force, threat, intimidation, bribery, reward or offer thereof, unlawfully prevents any qualified voter of any State, or of any Territory, from freely exercising the right of suffrage, or by any such means induces any voter to refuse to exercise such right, or compels, or induces, by any such means, any officer of an election in any such State or Territory to receive a vote from a person not legally qualified or entitled to vote; or interferes in any manner with any officer of such election in the discharge of his duties; or by any such means, or other unlawful means, induces any officer of an election or officer whose duty it is to ascertain, announce, or declare the result of any such election, or give or make any certificate, document, or evidence in relation thereto, to violate or refuse to comply with his duty or any law regulating the same; or knowingly receives the vote of any person not entitled to vote, or refuses to receive the vote of any person entitled to vote; or aids, counsels, procures, or advises any such voter, person, or officer to do any act hereby made a crime or omit to do any duty the omission of which is hereby made a crime, or attempt to do so, he shall be punished by a fine of not more than five hundred dollars, or by imprisonment not more than three years, or by both, and shall pay the costs of the prosecution."

The indictment charged that on the 4th day of November, 1890, at the county of Arapahoe, State of Colorado, the accused, James Connors, "did unlawfully interfere with the judges of election of the Eighteenth voting precinct in said county of Arapahoe, in the discharge of their duties, which said judges of election were then and there officers of the election for Representative in the Fifty-second Congress of the United States, in accordance with the laws of the State

of Colorado and of the United States, and did then and there unlawfully and with force and arms seize, carry away, and secrete the ballot box containing the ballots of said Eighteenth voting precinct, which on said 4th day of November, in the year aforesaid, at said election, had been cast for said Representative in Congress, and did then and there knowingly aid and assist in the forcible and unlawful seizure, carrying away, and secreting of said ballot box, and did then and there counsel, advise, and procure divers other persons, whose names are to the grand jurors unknown, so to seize, carry away, and secrete said ballot box, thereby, as aforesaid, interfering with said judges of election of said Eighteenth voting precinct, and hindering and preventing them, the said judges of election, from counting the votes which had been cast at said election, and from declaring and certifying the result thereof."

Motions to quash the indictment, to arrest the judgment, and for a new trial were made and overruled, and there was a verdict of guilty, upon which the court sentenced the accused to imprisonment in the House of Correction at Detroit, in the State of Michigan, for the period of fifteen months, to be fed and clothed there as the law directs.

1. The first assignment of error questions the sufficiency of the indictment, in that it charges the accused, as he insists, with three distinct offences in one count, namely : with having unlawfully and with force and arms seized, carried away, and secreted the ballot box containing the ballots cast at the election named; with having aided and assisted in the forcible and unlawful seizure, carrying away, and secreting of such ballot box ; and with having counselled, advised, and procured the seizure, carrying away, and secreting of the ballots at said election.

This objection to the indictment is not well taken. The offence charged was that of unlawfully interfering with the officers of the election in the discharge of their duties. Their duty was to ascertain and disclose the result of the election. That duty could not be performed without inspection of the ballots. Seizing, carrying away, and secreting the ballot box containing the ballots cast for Representative in Congress

necessarily interfered with the discharge of that duty. The indictment describes — perhaps with unnecessary particularity — the mode in which the crime charged was committed. If the accused himself unlawfully seized, carried away, and secreted the ballot box, or if he knowingly aided and assisted others in doing so, or if he counselled, advised, and procured others to do so, in either case, he was guilty of the crime of having unlawfully interfered with the officers of election in the discharge of their duties. The verdict of guilty had reference to that crime, whether committed in one or the other of the modes specified in the indictment. Undoubtedly, it was in the discretion of the court to compel the prosecutor to state whether he would proceed against the accused for having himself seized, carried away, and secreted the ballot box, or for having assisted or procured others to do so. But there was no motion to require the prosecutor to make such a statement. If the objection now urged could have been taken by motion to quash the indictment, it is sufficient to say that although the record shows that there was such a motion, the grounds of it are not stated. So far as the record discloses, the specific objection now urged was made for the first time after verdict by a motion in arrest of judgment. But such an objection, not made until after verdict, would not justify an arrest of judgment, and is not available on writ of error. 1 Bish. Crim. Pro. §§ 442, 443; Wharton's Crim. Pl. & Pr. § 255. Nor, if made by demurrer or by motion and overruled, would it avail on error unless it appeared that the substantial rights of the accused were prejudiced by the refusal of the court to require a more restricted or specific statement of the particular mode in which the offence charged was committed. Rev. Stat. § 1025. There is no ground whatever to suppose that the accused was taken by surprise in the progress of the trial, or that he was in doubt as to what was the precise offence with which he was charged.

2. Another assignment of error relates to the refusal of the court to permit certain questions to be propounded to jurors on their *voir dire.*

It appears from the bill of exceptions that upon the exami-

nation of jurors as to their competency to serve on the trial
jury, this question was propounded to one Stewart, called as a
juror : "To what political party do you belong and what were
your party affiliations in November, A.D. 1890?" The court
would not permit this question to be propounded, and an-
nounced that the proposed juror could not be called upon to
answer any question of similar import, touching his political
beliefs or attachments.

At a subsequent stage of the proceedings, the counsel for
the accused prepared and submitted in writing a number of
questions they desired to propound to jurors. Those questions
were as follows :

"Q. Did you take an active part in politics in the general
election of A.D. 1890; and if so, on which side?

"Q. Did you take an active part in politics in the general
election of A.D. 1890; and if so, with which of the parties
did you affiliate, and where?

"Q. Have you been heretofore or are you now strongly par-
tisan in your political belief?

"Q. Would your political affiliations or party predilections
tend to bias your judgment in this case either for or against
this defendant?

"Q. Were you ever at any time a member of what was and
is known in the city of Denver, county of Arapahoe, and State
of Colorado, as the committee of one hundred?

"Q. Were you ever at any time a judge or clerk of an elec-
tion; and, if so, when and where, and by what party were you
named and appointed?

"Q. Are you a member of any political club organized for
the advancement of the interests of any political party; and,
if so, what party?"

These questions and each of them were excluded by the
court and an exception duly taken.

The bill of exceptions also states that the questions last
above given were submitted to the court while the examina-
tion of jurors was in progress; that the presiding judge did not
observe the character of the fourth question; and that "if
attention had been directed to that question it would have

been allowed." We suppose the particular question thus referred to was, " Would your political affiliations or party predilections tend to bias your judgment in this case either for or against this defendant ? "

It is quite true, as suggested by the accused, that he was entitled to be tried by an impartial jury, that is, by jurors who had no bias or prejudice that would prevent them from returning a verdict according to the law and evidence. It is equally true that a suitable inquiry is permissible in order to ascertain whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried. That inquiry is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion. This is the rule in civil cases, and the same rule must be applied in criminal cases.

In *Mima Queen & child* v. *Hepburn,* 7 Cranch, 290, 297, in which the plaintiffs asserted their freedom as against the defendant who claimed them as his slaves, a juror was examined on his *voir dire* as to his fitness to serve on the jury. Being questioned, he avowed his detestation of slavery to be such that, in a doubtful case, he would find a verdict for the plaintiffs, and had so expressed himself with regard to that very case. He also stated that if the testimony were equal he should certainly find a verdict for the plaintiff. The court rejected him as a juror, and an exception was taken. Chief Justice Marshall, speaking for this court said : " It is certainly much to be desired that jurors should enter upon their duties with minds entirely free from every prejudice. Perhaps on general and public questions it is scarcely possible to avoid receiving some prepossessions, and where a private right depends on such a question the difficulty of obtaining jurors whose minds are entirely uninfluenced by opinions previously formed is undoubtedly considerable. Yet they ought to be superior to every exception, they ought to stand perfectly indifferent between the parties, and although the bias which was acknowledged in this case might not perhaps have been so strong as to render it positively improper to allow the juror to be sworn on the jury, yet it was desirable to submit the

case to those who felt no bias either way, and therefore the court exercised a sound discretion in not permitting him to be sworn."

Does the record show that the court below did not exercise a sound discretion in rejecting the above questions propounded or proposed to be propounded to jurors? We think not. It is true that the court below informs us by the bill of exceptions that if its attention had been called to the matter at the time it would have allowed the inquiry whether the political affiliations or party predilections of the juror would in anywise bias his judgment. But the court certainly did not believe that the rejection of that question in itself prejudiced the substantial rights of the accused. If it had so believed, a new trial, we may assume, would have been granted. We cannot, therefore, permit the recital in the bill of exceptions on this subject to control our determination of the question presented by the record.

We are of opinion that the court correctly rejected the question put to the juror Stewart as to his political affiliations. The law assumes that every citizen is equally interested in the enforcement of the statute enacted to guard the integrity of national elections, and that his political opinions or affiliations will not stand in the way of an honest discharge of his duty as a juror in cases arising under that statute. So, also, active participation in politics cannot be said, as matter of law, to imply either unwillingness to enforce the statutes designed to insure honest elections and due returns of the votes cast, or inability to do justice to those charged with violating the provisions of those statutes. Strong political convictions are by no means inconsistent with a desire to protect the freedom and purity of elections.

Particular stress is laid upon the refusal of the court to allow the question to jurors, "Would your political affiliations or party predilections tend to bias your judgment in this case either for or against this defendant?" In the absence of any statement tending to show that there was some special reason or ground for putting that question to particular jurors called into the jury box for examination, it cannot be said that the

court erred in disallowing it. If the previous examination of a juror on his *voir dire* or the statements of counsel, or any facts brought to the attention of the court, had indicated that the juror might, or possibly would, be influenced in giving a verdict by his political surroundings, we would not say that the court could not properly, in its discretion, if it had regarded the circumstances as exceptional, have permitted the inquiry whether the juror's political affiliations or party predilections would bias his judgment as a juror. But no such exceptional circumstances are disclosed by the record, and the court might well have deemed the question — unaccompanied by any statement showing a necessity for propounding it — as an idle one that had no material bearing upon the inquiry as to the qualifications of the juror, and as designed only to create the impression that the interests of the political party to which the accused belonged were involved in the trial. The public should not be taught, by the mode in which trials of this character are conducted, that the prosecution of a crime against the laws securing the freedom and integrity of elections for Representatives in Congress will be regarded by the court as, in effect, a prosecution of a political party to which the accused belongs. If an inquiry of a juror as to his political opinions and associations could ever be appropriate in any case arising under the statute in question, it could only be when it is made otherwise to appear that the particular juror has himself by his conduct or declarations given reason to believe that he will regard the case as one involving the interests of political parties rather than the enforcement of a law designed for the protection of the public against frauds in elections.

In respect to the question referring to the Committee of One Hundred in the city of Denver, it is only necessary to say that there is nothing in the record showing any such connection between that committee and this prosecution as would disqualify a member of that organization from sitting as a juror. If that committee was in fact behind the prosecution of the defendant, actively supplying the government with information to convict him of the crime charged, the court

without abuse of its discretion might have allowed the question. But the record shows no such state of case.

Other questions have been discussed by counsel, but they are not of sufficient gravity to require notice at our hands.

We perceive no reason to doubt that the accused was fairly tried. No error of law having been committed by the court below, the judgment is

*Affirmed.*