TINGLE v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. April 12, 1898.)

No. 630.

1. CRIMINAL LAW — CROSS-EXAMINATION OF ACCUSED — PROOF OF INDICTMENT OF FORMER PARTNER.

Defendant, who was on trial for fraudulent use of the mails, testified on his own behalf, and on cross-examination was asked if his former partner was not under indictment for fraudulent use of the mails. Over his objection, he was compelled to answer, and answered in the affirmative. Held reversible error.

2. FRAUDULENT USE OF MAILS—FICTITIOUS NAME—REAL PERSON.

Under an indictment under Rev. St. § 5480, as amended by Act March 2, 1889, § 2, for using a false, fictitious, or assumed name in carrying out a scheme to defraud by the use of the mails, defendant could not be convicted of aiding a real person of that name in carrying out such a scheme.

3. SAME — PARTICULAR ACT CHARGED — INSTRUCTIONS ASKED—WAIVER OF ERROR.

An indictment for the fraudulent use of the mails charged that defendant deposited in the post office a large number of letters addressed to J. and various other unknown persons. The court refused his request to instruct the jury that the particular act charged against defendant was the mailing of the letters addressed to J., that they should acquit him if he did not mail

it, and that they could only consider evidence of the writing and mailing similar letters to other persons in determining the intent of defendant. *Held*, that the error, if any, was not available; no motion to quash, to elect, or in arrest having been made, or bill of particulars asked for.

In Error to the District Court of the United States for the Northern District of Texas.

This was an indictment against Stonewall Tingle for using the mails to defraud.

The indictment is as follows:

The United States of America, Northern District of Texas, to Wit:

In the District Court of the United States within and for the Northern District of Texas.

In the name and by the authority of the United States of America: The grand jurors of the United States within and for the district aforesaid, at Dallas, in said district, duly selected, impaneled, sworn, and charged to inquire into, and true presentment make of, all crimes and offenses cognizable under the authority of the United States, committed within the said Northern district of Texas, upon their oaths present in open court that on the 15th day of January, A. D. 1897, in Dallas county, Texas, in the Northern district of Texas, and within the jurisdiction of this court, one Stonewall Tingle did then and there unlawfully, knowingly, and fraudulently devise a scheme and artifice to defraud J. W. Jenkins' Sons, the individual names of which firm are unknown to the grand jurors, and various other persons, whose names are also unknown to the grand jurors; said scheme and artifice to be effected by intending to open and by opening correspondence and communication with the said J. W. Jenkins' Sons and the other unknown persons, and inciting the said J. W. Jenkins' Sons and other unknown persons to open communication with him, the said Stonewall Tingle, but who was doing business and pretending to do business under the fictitious and false name of Otho Aronson, by means of the post-office establishment of the United States, and which said use and misuse of said post-office establishment was then and there a part of said scheme to defraud; and which said scheme to defraud was intended to be effected by falsely pretending to be in the business of teaching vocal and instrumental music, of selling sheet music and musical instruments, under the said fictitious name of Otho Aronson, and by falsely pretending, in and through certain letters and advertisements, which are too lengthy and voluminous to be set forth in this instrument, and to be desirous of selling musical instruments and sheet music, for the said J. W. Jenkins' Sons, and for various other persons unknown, to his pretended musical pupils; falsely pretending to have a music school of thirty pupils, and an acquaintance of a large number of music teachers, to whom he could sell sheet music and musical instruments, and falsely representing that he, the said Stonewall Tingle, under the fictitious name of Otho Aronson, had already made arrangements whereby a large amount of said goods could be sold, and that he already had a considerable business of this character, whereas, in truth and in fact, he, the said Stonewall Tingle, was not in the business of teaching instrumental and vocal music, and was not in the business of selling musical instruments and sheet music, and did not have a school of thirty or any other number of music pupils, and had not made arrangements for the sale of musical instruments and sheet music, and did not have a considerable business of that character; but he, the said Stonewall Tingle, under the name of Otho Aronson, and by the use of the United States post-office establishment in the letters and circulars aforesaid, made these false representations in order to procure possession of such musical instruments and sheet music, and by thus deceiving the said J. W. Jenkins' Sons, and various other unknown persons, for the purpose of selling the same, and with the fraudulent intention of appropriating the proceeds thereof to his own use and benefit; and the said Stonewall Tingle did then and there, unlawfully and fraudulently, on the 15th day of January, 1897, in the execution of said artifice and scheme to defraud, deposit in the post office of Dallas, Texas, a large number of letters and circulars, as mentioned above, which are too voluminous to be

87 F.—21

inserted in this instrument, and directed the same to J. W. Jenkins' Sons, and to various other unknown persons, a more particular description of which said letters is unknown to the grand jurors; and by means of which said scheme and artifice to defraud, thus misusing the United States post-office establishment, the said Stonewall Tingle came into possession of a large number of musical instruments, and fraudulently appropriated the same to his own use and benefit, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

## The assignment of errors is as follows:

(1) The court erred in permitting the government to prove by the defendant, and over his objection, that S. W. Hicks, a former partner of defendant, was under indictment for fraudulently using the mails, as shown by bill of exceptions No. 1. (2) The court erred in the following paragraph of its charge to the jury, to wit: "It is the theory of the government that this defendant impersonated the Professor Otho Aronson, and that the letters purporting to have been written by him were written by the defendant, or at his instigation or suggestion. The government also suggests that if there was such a person as Professor Aronson, and that he devised the scheme to defraud by the use of the mails of the United States, that the evidence so connects this defendant with the knowledge of that scheme, and participation in it, that he is guilty of the charge. I need not say to you that, if you find either one of these theories to be correct, you will be compelled to convict the defendant." (3) The court erred in the following paragraph of its charge to the jury: "You will ask yourselves whether there was any such person as Otho Aronson. If there was not, you will determine, if you can, whether this defendant had anything to do with this scheme, whether it was a scheme to defraud by the use of the mails, and whether the mails were used or not. If you find that there was such a person as Otho Aronson, you will determine from the evidence whether or not he formulated a scheme to defraud by the use of the mails, and used the mails in that particular, and whether or not the defendant acted with him, and with such knowledge of that purpose as to render him guilty." (4) The court erred in refusing to give to the jury the special instruction asked by the defendant, and in not instructing the jury, as therein requested, that the particular act charged against the defendant was the mailing of the letter dated January 15, 1897, signed, "Otho Aronson," and addressed to J. W. Jenkins' Sons, Kansas City. (5) The court should have instructed the jury that they must acquit the defendant unless they believed that he mailed or caused to be mailed the said letter dated January 15, 1897, and that proof of the writing and mailing by the defendant of other letters of similar character to other persons could only be considered by the jury in determining the intent of the defendant.

M. L. Crawford, for plaintiff in error.
J. Ward Gurley, for the United States.

Before McCORMICK, Circuit Judge, and NEWMAN and PARLANGE, District Judges.

PARLANGE, District Judge, as the organ of the court, said:

The first specification of error is that proof was allowed to the effect that one Hicks, a former partner of the defendant, was under indictment for fraudulently using the mails. The defendant, having testified in his own behalf, was asked by the district attorney, on cross-examination, whether his partner was not under indictment for fraudulent use of the mails. The defendant's counsel objected to the question, but the defendant was required to answer, and he thereupon answered the question in the affirmative. The defendant was being tried for an offense of the same kind as that for which his former partner was u 'er indictment. There was no proof of any connection

between the defendant and his former partner as to the matter for which the defendant was being tried. We have no doubt that the effect of this evidence was prejudicial to the defendant, and that it was inadmissible. The counsel for the government argued that:

"Great latitude is allowed upon such cross-examination, and it was manifestly proper to examine the defendant relative to all his associations, habits, and the influences and circumstances surrounding his life, in order to test, not only his accuracy, but the worth of his evidence, and to enable the jury to correctly determine what credit they should give to his statements. This evidence was perfectly proper for that purpose. * * *"

While it is true that latitude should be allowed on cross-examination, we cannot agree with the counsel for the government in his contention. We do not believe that, for the purpose of testing the accuracy or veracity of the defendant, or for any other purpose, he could be compelled to make answer to the question propounded to him concerning his former partner; and the fact that his former partner was under indictment for a matter with which the defendant had no connection whatever, could not be thus used against the defendant. The admission of this evidence enabled the jury to draw against the defendant a prejudicial and unlawful inference.

The second and third specifications of error may be considered together. Section 5480, Rev. St., was amended by Act March 2, 1889. Among other matters, the amendment, by section 2, provides for the punishment of persons who use a fictitious, false, or assumed name in carrying out schemes to defraud by the use of the mails. This is made a new and substantive offense under section 5480, Rev. St., as amended. The indictment in this case contains but one count. It is perfectly clear that it was drawn under section 2 (section 5480, Rev. St., as amended). The only charge is that the defendant, under the fictitious and false name of one Otho Aronson, made a fraudulent use of the mail. This is the only charge to which the defendant was called upon to respond. The district attorney could, by adding a count, have also laid a charge under the first part of the act of March 2, 1889, to provide against the contingency of Otho Aronson being a real person. But no such alternative count is contained in the indictment, and, doubtless, the court's attention not being called to the matter, the jury were charged that they could convict the defendant, whether or not Aronson was a real person. In our opinion the jury could not do so, under the indictment as framed. The prosecution had chosen to stand upon the one charge (laid under section 2 of the act of March 2, 1889) that Aronson was a fictitious person. Furthermore, even had the indictment set out that Aronson was a real person, we are of the opinion that it was not made sufficiently clear to the jury that mere knowledge on the part of the defendant that Aronson had devised the fraudulent scheme, and had used the mails in carrying it out, was not sufficient to convict the defendant.

As to the fourth and fifth specifications of error, we incline to the opinion that, even if there is any validity in these contentions of the defendant, he cannot be heard to urge them now; and, besides, we do not believe that he was injured by surprise or otherwise. No motion

to quash·was ever made, no motion to elect, no motion in arrest of judgment. No bill of particulars was ever asked for. Connors v. U. S., 158 U. S. 411, 15 Sup. Ct. 951. In Durland v. U. S., 161 U. S. 309, 16 Sup. Ct. 508,—a case in which the indictment was based on section 5480, Rev. St.,—it was charged in one count that 20 letters and circulars, the names and addresses upon them being unknown to the grand jurors, were deposited in the mail, in the carrying out of the fraudulent scheme. These letters and circulars were not recited in the indictment. Their substance was not stated, and, as already said, there was no mention of the names and addresses of the persons to whom they were mailed. Furthermore, a motion to quash was seasonably made in the trial court, and the same was overruled. The supreme court held, as to the defendant's contention that the letters were insufficiently described, that the refusal of a motion to quash is ordinarily in the discretion of the court, and, further, that the allegation that the names and addresses on the letters were unknown to the grand jurors, if true, cured the defect. The court also said that, if the defendant desired further specifications, he should have asked for a bill of particulars. As to the plea of multifariousness, the supreme court affirmed the doctrine of Connors v. U. S., supra. It was held in Re Henry, 123 U. S. 372, 8 Sup. Ct. 142, that while but three offenses committed in violation of section 5480, Rev. St., within the same six calendar months, can be charged in the indictment, this does not prevent other indictments for other and distinct offenses committed in violation of that statute within the same six calendar months. In Howard v. U. S., 21 C. C. A. 586, 75 Fed. 996, the defendant had committed, within the same six calendar months, twenty-four offenses in violation of section 5480, Rev. St. Eight indictments were found, each charging three of the offenses. The eight indictments were consolidated, and tried at the same time. The defendant was convicted on all the charges, and the trial court imposed cumulative punishment on each indictment. The circuit court of appeals for the Sixth circuit maintained the action of the lower court. For the reasons stated the judgment herein is reversed, the sentence is annulled, and the cause is remanded to the lower court for a new trial.