## MURPHY v. UNITED STATES.[*]

(Circuit Court of Appeals, First Circuit. August 6, 1925.)

No. 1831.

Jury ⬤⟲131(4)—No abuse of discretion in court's limiting examination for bias and prejudice.

For trial judge to refuse to allow counsel personally to examine jurors on their voir dire along a line suggested by him, which from its nature might have been extended to great length, and then on counsel suggesting no questions to be submitted by the court, as the judge told counsel he might do, to state to the jurors the purport of the indictment, and ask if there was any reason why any of them could not fairly and impartially try defendant, and direct that if there was he should stand aside, *held* not unwise or arbitrary or abuse of discretion.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

John A. Murphy was convicted under Cr. Code, § 37, and brings error. Affirmed.

George D. Zahm, of New York City, for plaintiff in error.

George R. Farnum, of Boston, Mass. (Harold P. Williams, of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. The defendant, one Ryan, and one House were indicted under section 37 of the Criminal Code (Comp. St. § 10201) for conspiring to commit an offense against the United States by fraudulently altering certain registered United States Liberty bonds by erasing the name of the original owner thereon and substituting the name of House, and thereafter negotiating them. House and Ryan pleaded guilty. The defendant was convicted, and sentence imposed.

[*]Certiorari denied 46 S. Ct. 120, 70 L. Ed. —.

The case is here upon thirty assignments of error; but only three have been argued. Two of these relate to the refusal of the District Judge to permit counsel for the defendant to examine the jurors upon the voir dire or to interrogate them himself "as to their attitude towards this sort of a case and to determine whether, if selected as jurors, they would be fair and impartial."

Defendant filed a motion to set aside the verdict and for a new trial, which was denied, and this is assigned as error. The grounds for this motion were stated to be "that the verdict is contrary to the weight of evidence, contrary to the law, and upon the further ground that the defendant was deprived of a constitutional right because the court refused to permit counsel for the said defendant to interrogate the prospective jurors on their voir dire," and refused to interrogate them, as alleged in the other two assignments of error.

There is no merit in the defendant's contention that the verdict is against the weight of evidence, as the only question before us is whether there was any evidence to support the verdict; but of this there can be no doubt. The sole question for our consideration, then, is whether defendant was deprived of any constitutional right because of the alleged refusal of the District Judge to permit counsel to interrogate the jurors on the voir dire or to interrogate them himself, as requested by defendant.

The record discloses that, when the jury was being impaneled, Mr. Zahm, the defendant's counsel, stated that he desired to interrogate the jurors as they were called, substantially according to the practice which prevails in the state of New York and in the federal courts of that state. The court explained to Mr. Zahm the practice which prevails in Massachusetts and the United States courts in Massachusetts. Mr. Zahm replied that he thought it did not meet the constitutional requirements. The following colloquy then occurred:

"The Court: You may suggest to me any questions that you would like to have put to the jury, and I will consider them.

"Mr. Zahm: We should like to interrogate the jurors as to their attitude towards this sort of case, and to determine whether, if selected as jurors, they would be fair and impartial.

"The Court: No; I should not permit examination along that line, and I will save your exception. Perhaps you had better state more fully what line your examination would follow.

"Mr. Zahm: My line would be whether or not they ever lost any bonds; whether the fact of an indictment would prejudice them against the defendant; whether they felt they could sit as jurors fairly; whether their attitude is such that, if they were in the position of the defendant, they would select a man of similar mental attitude to pass judgment. I want to examine the prospective jurors upon their voir dire, in order to determine whether their mental attitude is such that, if selected, they can give the defendant a fair and impartial trial under the Constitution of the United States. My questions would follow those general lines.

"The Court: I see no occasion for such a voir dire, and should not permit it. I will adhere to the Massachusetts practice.

"Mr. Zahm: I recognize that the practice here is as the court states; but I say that the defendant has the right to interrogate jurors to determine for himself whether they are fair and impartial to try the case.

"The Court: It is a matter of discretion with the court.

"Mr. Zahm: And I may have an exception to your honor's ruling?

"The Court: Yes."

The record contains the following statement:

"After the panel had been called and taken their seats, but while the right of challenge was still open, the court stated to the jurors the purport of the indictment, and inquired specially if there was any reason why any of them could not fairly and impartially try the defendant on the indictment. The court directed that, if such was the fact, the juryman concerned should make it known and stand aside. No juror did stand aside. Both parties were left free to exercise peremptory challenges in the usual manner. The jury was then sworn and the trial proceeded."

Under the Massachusetts practice, an examination of jurors upon their voir dire may be made under the direction of the court, and here, as elsewhere, the court, in the exercise of a sound judicial discretion, may determine the extent and character of such examination. By the exercise of sound, judicial discretion it will be understood that the court is not to exercise discretion in an arbitrary or unwise manner; but that such examination shall be permitted as may disclose any prejudice or bias on the part of jurors.

In Connors v. United States, 158 U. S. 408, 413, 15 S. Ct. 951, 953 (39 L. Ed. 1033),

the court, speaking through Mr. Justice Harlan, said:

"It is quite true, as suggested by the accused, that he was entitled to be tried by an impartial jury, that is, by jurors who had no bias or prejudice that would prevent them from returning a verdict according to the law and evidence. It is equally true that a suitable inquiry is permissible in order to ascertain whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried. That inquiry is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion. This is the rule in civil cases, and the same rule must be applied in criminal cases."

Although the District Judge did not allow defendant's counsel, personally, to examine the jurors along the line suggested by him, which, from the nature of the inquiry suggested, might have been extended to great length and have led to long delay, he did state that counsel might suggest such questions as he would like to have put to the jurors. Counsel did not propose any questions to be submitted by the court, but insisted upon his right to interrogate them personally, and stated, at some length, what his line of examination would be, insisting that he had the right to conduct such an examination.

The opinion expressed by Justice Harlan, before quoted, has become the guide of all federal courts in the selection and impaneling of juries, and we know of no decision by the Supreme Court, nor has any been called to our attention, which does not place the method in which this shall be done within the sound judicial discretion of the presiding judge.

For convenience, and because the method adopted by the highest court of the state in which the District Court is held is well known to practitioners, that method has been usually adopted; and in the state of Massachusetts the examination has been conducted under the direction of the presiding judge.

In speaking of this, Judge Holmes, in Commonwealth v. Poisson, 157 Mass. 510, 512, 32 N. E. 906, 907, says:

"It would be unfortunate if all control of such an examination should be taken from the court, and we do not interpret the Statute of 1887, c. 149, as having that effect. On the contrary, the power given by the Statute of 1887 to the parties to make the examination provided for by the public statutes is, in terms, to make it 'under the direction of the court.'"

The record in this case discloses that, while the right to challenge was still open, "the court stated to the jurors the purport of the indictment and inquired specially if there was any reason why any of them could not fairly and impartially try the defendant on the indictment," and directed "that, if such was the fact, the juryman concerned should make it known and stand aside. No juror did stand aside."

The record also discloses that "both parties were left free to exercise peremptory challenges in the usual maner."

We think there is no ground for holding that the action of the presiding judge was unwise or arbitrary, but that what he did was within the exercise of a sound judicial discretion.

The judgment of the District Court is affirmed.