**UNITED STATES of America, Plaintiff,**

**v.**

**Leland John MOSIMAN, Defendant.**

**No. 81-CR-80.**

United States District Court, E.D. Wisconsin.

March 12, 1985.

Ben L. Chernov, Milwaukee, Wis. (court-appointed), for plaintiff.

Patricia J. Gorence, Asst. U.S. Atty., Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

The defendant, Leland J. Mosiman, was convicted in September, 1981, following a jury trial, of five counts of travel in interstate commerce for purposes of extortion, in violation of 18 U.S.C. § 1952(a)(3), and one count of intent to extort money by means of a telephone conversation, in violation of 18 U.S.C. § 875(b). He was sentenced on September 24, 1981, to seven years in prison on count five and five years in prison on each of the remaining counts, all terms to run concurrently. He has now filed a motion, *pro se*, to vacate his sentence pursuant to 28 U.S.C. § 2255. He alleges in his motion that he was denied effective assistance of counsel at trial; that his conviction was obtained as a result of prosecutorial misconduct; that the jury selection process was unconstitutional; that the jurors perjured themselves during voir dire; and that he received ineffective assistance of counsel on appeal. A hearing will be ordered to consider Mr. Mosiman's claim that he was denied the effective assistance of counsel on appeal. His motion to vacate his sentence will be denied in all other respects.

## BACKGROUND

On April 13, 1981, Mrs. Jean Shore of Elm Grove, Wisconsin, received a package from the United Parcel Service sent from New Jersey. Inside the package, she found a backgammon case. Upon opening the case, Mrs. Shore was sprayed with mace. The following day, Mrs. Katherine Gingrass of Wauwatosa, Wisconsin, received a similar package, which also contained a backgammon set and a mace bomb. Approximately two days later, both women received telephone calls in which a male caller asked each of them if they had received the packages.

On April 29, Mrs. Shore received a phone call from the same male caller directing her to go to the Sambo's Restaurant in West Allis, Wisconsin. In response to the call, police officers were sent to the restaurant, where they discovered a letter dated April 28, 1981, directed to Dr. Shore and Dr. Gingrass. The letter threatened the doctors that unless they provided the extortioner with $30,000 in cash, they or their wives and families would meet with a fatal accident.

The next day, Mrs. Shore received a phone call from the same male caller who had previously telephoned her. He told her to go to the Midway Motor Lodge, get a room, and await further instructions. Thereafter, FBI agent Burdene Pasanelli, posing as Mrs. Shore, checked into the motor lodge. Over the next two days, she received a number of phone calls both at the motor lodge and at Mrs. Shore's home, all of which were traced to Toledo, Ohio, and in which delivery of the $30,000 was discussed.

On May 2, 1981, pursuant to the male caller's instructions, two FBI agents, posing as representatives of the Shore family, traveled to Cleveland, Ohio, for the purpose of consummating the delivery of the money. The caller and the agents, however, were unable to accomplish the transfer of the money, and the agents returned to Milwaukee.

Three days later, on May 5, two phone calls traced to Newark, New Jersey, were received at the Shore residence from the same male caller. During the first phone call, the caller stated to Agent Pasanelli that due to the failed delivery in Cleveland, he would carry through with his earlier death threats. In the second call, however, he advised the agent to keep the money at the Shore home and wait for a phone call the next day.

The following evening the male caller telephoned the Shore home and directed Agent Pasanelli, still posing as Mrs. Shore, to go to a phone booth in Elm Grove. The call was traced to a phone booth across from a candy shop in the Mayfair Shopping Center. An FBI agent was immediately sent to the area and observed the defendant in the vicinity of the phone booth from which the call had been placed. Shortly thereafter, the agent observed the defendant placing a call from another public telephone in the shopping center. At the same time, Agent Pasanelli was receiving a phone call at the telephone booth to which she had been directed in Elm Grove. Agent Pasanelli was instructed to come to the shopping center and await another call.

During the subsequent call, the male caller told her to pick up two grocery bags from a refuse container near the public telephone. The bags were wrapped in masking tape that matched a roll of tape later found in the defendant's car. Following additional instructions and another call from the extortioner, Agent Pasanelli was told to place the money inside one of the grocery bags and to leave it in front of the Household Finance Company (HFC) office at Mayfair Shopping Center. A short time later, the agent, following instructions, left the bag outside the HFC office. Approximately four minutes thereafter, Mr. Mosiman was observed picking up the bag, looking into it, and walking toward a shopping center exit with it. At that point, FBI agents placed the defendant under arrest.

## ANALYSIS

### (A) Effective Assistance of Counsel at Trial

Mr. Mosiman was represented at trial by attorney Francisco M. Camacho. Mr. Camacho was privately retained by Mr. Mosiman; he was not appointed by the court. The defendant contends that Mr. Camacho's assistance at trial was ineffective and that, as a result, he was denied a fair trial. Mr. Mosiman cites several alleged facts in support of his claim of ineffective assistance. These specific allegations will be discussed in turn.

The sixth amendment right to counsel guarantees a criminal defendant the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S.

759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In order to prevail on a claim of ineffective assistance where actual ineffectiveness is alleged, as in the present case, the defendant must meet the test enunciated in *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* a defendant can prevail on a claim of ineffective assistance only if he proves both that counsel's performance was deficient in that it fell below the objective standard of reasonable professional performance and that counsel's deficiency was so prejudicial as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* 104 S.Ct. at 2064–65. The court's inquiry must focus on the fundamental fairness of the trial when considered in light of the circumstances of the individual case. *Id.* at 2069. Although each allegation of attorney incompetence is examined individually, the cumulative impact of the incidents is also to be considered. *Crisp v. Duckworth,* 743 F.2d 580, 583 (7th Cir.1984).

Judicial evaluation of an attorney's performance must be highly deferential. The court begins with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and might be considered sound trial strategy. *Strickland, supra,* 104 S.Ct. at 2066.

Counsel's assistance, even if professionally unreasonable, does not justify vacating the sentence if the errors had no effect on the conviction. *Id.* at 2067. The burden is on the defendant to prove that absent the alleged errors by counsel, there is a reasonable probability that the jury would have had a reasonable doubt respecting guilt. *Id.* at 2069.

Mr. Mosiman initially observes that on several occasions during the trial, I was critical of Mr. Camacho's performance. He specifically cites instances in the record where I referred to Mr. Camacho's statements as "absurd, possibly stupid" and where I stated, "I am not sure of the competence of counsel." R. 499. It should first be noted that I made these comments during the jury instruction conference, out of the presence of the jury. Hence, the jury could not have been prejudiced against Mr. Mosiman by the comments. Moreover, shortly after I made my comments about Mr. Camacho, I stated, "I must withdraw my suggestion of incompetence. I think you [Mr. Camacho] finally got to tell me what you had in mind." R. 502.

In any case, my isolated expressions of opinion concerning Mr. Camacho neither establish that his performance at trial fell below the standard for reasonable professional performance nor indicate that his performance so prejudiced the defendant's right to a fair trial as to undermine confidence in the outcome of the trial.

It is also true that I cited Mr. Camacho for criminal contempt due to his tardy appearance on the first day of Mr. Mosiman's jury trial. In my opinion, the contempt citation did not affect the adequacy of Mr. Camacho's actual performance at trial and does not support a finding of ineffective assistance.

Mr. Mosiman next challenges Mr. Camacho's failure to ask the prosecutor why he did not make a print of Mr. Mosiman's voice. Mr. Mosiman contends that such a voice print would have established his innocence. He further alleges that Mr. Camacho told him that he would point out the prosecutor's failure to make the voice print in his closing statement but that he failed to do so.

The prosecutor was under no duty to prepare a print of Mr. Mosiman's voice. The prosecutor, however, did offer testimony by Agent Pasanelli that the voice of the extortioner, who telephoned her while she was posing as Mrs. Shore, was that of Mr. Mosiman. Under these circumstances, Mr. Camacho's failure to comment on the prosecution's failure to make a voice print may well have been sound trial strategy.

Mr. Mosiman's third allegation in support of his claim of ineffective assistance is that Mr. Camacho, following voir dire, did not challenge the jury's denial that they had read or heard anything about the case prior

to trial. Actually, the record indicates a "no response" by the members of the jury panel when the court asked them whether they knew or had read or heard anything about the case. R. 17–18. Within the context of the voir dire, it is reasonable to infer that the "no response" to the court's inquiry was equivalent to a denial that the members of the panel had previous knowledge of the case. Mr. Mosiman asserts that both major Milwaukee newspapers carried several stories about the case. Based on this alleged fact, Mr. Mosiman apparently assumes that the members of the panel must have read about the case before trial and thus must have perjured themselves when they denied knowing or reading anything about the case.

Mr. Mosiman's claim is purely speculative and must be rejected. Even assuming the newspapers carried stories on the case in advance of trial, Mr. Mosiman has offered no evidence to challenge the prospective jurors' failure to disclose whether they had heard or read about the case. Moreover, even if one or more of the jurors had read some or all of the alleged newspaper accounts, Mr. Mosiman has neither alleged nor offered any evidence to show that his case was thereby prejudiced.

Mr. Mosiman next contends that Mr. Camacho did not insist on questioning prospective jurors before challenging them peremptorily and that he told Mr. Mosiman to pick the jurors by their sex and appearance alone. Mr. Mosiman's first contention is contradicted by the clear evidence in the record that Mr. Camacho did in fact question the jurors on voir dire. Mr. Mosiman's allegation that he was told by Mr. Camacho to select jurors on the basis of their appearance and sex alone, even if true, does not demonstrate either unreasonable professional performance or prejudice. The defense may exercise its peremptory challenges on any basis that it sees fit. *See Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

In support of his ineffective assistance claim, Mr. Mosiman also alleges that Mr. Camacho failed to stop the prosecutor from accusing Mr. Mosiman of certain past fraudulent acts and failed to stop the prosecution from introducing evidence of a 1975 conviction of Mr. Mosiman.

It is not clear what Mr. Mosiman is referring to here. It is true that in his closing remarks, the prosecutor referred to the fact that Mr. Mosiman and a Mr. Kelly had been sued for fraud. R. 538. The prosecutor, however, was merely repeating what Mr. Mosiman had testified to on direct examination. R. 417. More importantly, an examination of the record reveals that the prosecutor did not introduce evidence of any prior conviction of Mr. Mosiman during the jury trial. The prosecutor made reference to a prior conviction only after the jury had reached its verdict and had been excused, when the matter of bail pending sentencing was discussed. Such reference by the prosecutor was certainly permissible. *See* Fed.R.Evid. 404(b). Mr. Camacho's failure to object to the prosecutor's alleged remarks can hardly constitute ineffective assistance of counsel when he had no valid basis for objection.

Mr. Mosiman next asserts that Mr. Camacho permitted the prosecutor to present proof at the trial that the defense had not been told about in advance of the trial. Mr. Mosiman leaves the court to speculate as to what evidence or witnesses he is referring; I decline to engage in such guesswork.

In the same vein, Mr. Mosiman states in conclusory terms that Mr. Camacho was not competently prepared to represent him; that he had Mr. Mosiman going through papers throughout the trial; that Mr. Camacho was "walked over" by the prosecution; and that Mr. Camacho did not know court procedure. These claims are entirely conclusory and utterly fail to support a finding of ineffective assistance.

Mr. Mosiman further attempts to support his claim of ineffective assistance by attaching to his motion an August 14, 1983, newspaper article which reported that Mr. Camacho had been charged with 18 counts of misconduct by the Wisconsin Board of

Attorneys Professional Responsibility. There is no indication that any of these charges involved Mr. Camacho's representation of Mr. Mosiman or, for that matter, of any criminal defendants. The fact that Mr. Camacho may have been charged with misconduct in unrelated cases does not establish that he provided ineffective assistance to Mr. Mosiman in this case.

As additional support for his ineffective assistance claim, Mr. Mosiman asserts that Mr. Camacho failed to appeal his conviction. This claim is discussed separately below.

In sum, after reviewing the record in this case and considering the alleged trial errors of Mr. Camacho individually and for their cumulative impact, I find that the defendant has failed to overcome the presumption that Mr. Camacho provided reasonable professional assistance to Mr. Mosiman at trial. Had I determined that Mr. Camacho's performance was deficient under the *Strickland* test, Mr. Mosiman's claim of ineffective trial assistance would nonetheless fail because he has not met his burden of showing that the alleged errors were so prejudicial as to deprive him of a fair trial. Stated another way, I do not believe that absent the alleged errors there is a reasonable probability that the jury would have had a reasonable doubt respecting Mr. Mosiman's guilt. *Strickland, supra,* 104 S.Ct. at 2069.

The evidence of Mr. Mosiman's guilt in this case was extremely strong. Indeed, the proof of Mr. Mosiman's guilt was as clear and compelling as any case that I have heard in my 35 years as a judge. Agent Pasanelli who, posing as Mrs. Shore, spoke with the extortioner on several occasions, identified the voice as that of Mr. Mosiman. Moreover, the jury, who heard Mr. Mosiman testify at length, was permitted to listen to the tape recorded calls from the extortioner and make their own voice comparison. The April 30 and May 1 phone calls from the extortioner, traced to Toledo, were made from a phone booth across the street from the hotel where Mr. Mosiman was, at the time, a registered guest. The handwriting exemplars that Mr. Mosiman completed for the FBI contained the same spelling errors as were made in the extortion letter. The masking tape on the paper bags that Agent Pasanelli retrieved, as per the extortioner's instructions, was matched to the roll of tape later found in Mr. Mosiman's car. Shortly before Agent Pasanelli dropped off the paper bag at the HFC office, Mr. Mosiman was observed in the vicinity of the office, acting suspiciously. Finally, Mr. Mosiman was caught red-handed picking up and carrying away the bag placed in front of the HFC office by Agent Pasanelli according to the instructions of the extortioner.

Considering the trial record as a whole, I conclude that the alleged errors of Mr. Camacho were not "so serious as to deprive the defendant of a fair trial...." *Strickland, supra,* 104 S.Ct. at 2064. Therefore, I reject Mr. Mosiman's claim of ineffective assistance of counsel at trial as a basis for vacating his sentence.

(B) Prosecution's Failure to Investigate

As the second ground in support of his motion to vacate, Mr. Mosiman claims that his conviction was obtained as a result of the prosecution's failure to disclose to the defendant evidence favorable to his defense. In support of this claim, Mr. Mosiman cites the prosecution's decision not to investigate Mr. Mosiman's allegations against other persons and its decision not to make a comparative print of the defendant's voice.

It is well-established that a prosecutor has the duty, upon request, to provide a defendant with any exculpatory information it has in its possession. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This duty, however, has not been extended to require the prosecutor to investigate any allegation made by a defendant which, if true, might be favorable to his defense. *See United States v. Navarro,* 737 F.2d 625, 631–32 (7th Cir. 1984). Mr. Mosiman has not alleged that the prosecutor had exculpatory evidence in

his possession which he withheld from the defendant. Thus, Mr. Mosiman's claim that the prosecutor did not investigate various allegations or obtain certain evidence does not support § 2255 relief.

(C) Jury Selection

Mr. Mosiman next claims that the jury selection process was deficient because the jurors' names were placed in a box that was too small to allow them to be mixed for random selection and that neither he nor Mr. Camacho were permitted to question the prospective jurors prior to exercising their strikes.

At trial, I considered Mr. Mosiman's objection to the randomness of the jury selection process and rejected it as "frivolous." R. 39. My opinion has not changed. I am thoroughly satisfied that the method employed to pick prospective jurors in this case provided for a random selection from the jury panel.

Mr. Mosiman claims that neither he nor his attorney were permitted to question the prospective jurors individually. Mr. Camacho, however, was never prohibited from doing so. He was simply instructed that he had ten minutes to ask questions of the panel and could use that time as he saw fit. R. 25. Mr. Mosiman contends, nevertheless, that the ten minutes alloted was inadequate. He also alleges error in the court's failure to question the jurors as to whether they or someone they knew had been an extortion victim.

The voir dire examination is designed to protect a defendant's sixth amendment right to an impartial jury. *Connors v. United States,* 158 U.S. 408, 413, 15 S.Ct. 951, 953, 39 L.Ed. 1033 (1895). The district court is given broad discretion in conducting the voir dire. *Ham v. South Carolina,* 409 U.S. 524, 528, 93 S.Ct. 848, 851, 35 L.Ed.2d 46 (1973). Where there are no special circumstances indicating racial or ethnic bias, the questioning of the jury panel need only provide "some basis for a reasonably knowledgeable exercise of the right of challenge, whether for cause or peremptory." *United States v. Jackson,* 542 F.2d 403, 413 (7th Cir.1976).

Limiting voir dire to ten minutes per side in this case was well within the court's discretion. In addition to this allotment, I conducted a complete voir dire of the panel. Under Rule 24(a), Federal Rules of Criminal Procedure, the court is not even required to permit the parties to conduct their own voir dire provided that they are given the opportunity to submit requests to the court for additional questions to be asked. Ten minutes was an adequate time period for the defendant to explore any areas that he felt I had not thoroughly covered. It should be noted that Mr. Camacho did not even use his full ten-minute allotment. Under these circumstances, the defendant was not prejudiced by the time limit.

I also reject Mr. Mosiman's contention that he was prejudiced by my failure to question the jurors concerning their possible relationship to any extortion victims. During voir dire, I advised the members of the jury panel of the nature of the case and asked them if there was any reason "either because of the nature of the case or for any other reason," why they felt they should be excused. R. 24. In addition, Mr. Camacho had an ample opportunity to question members of the panel as to whether they were acquainted with any extortion victims. In sum, I am satisfied that the voir dire in this case provided the defendant with a reasonable basis for exercising his right to challenge.

(D) Alleged Jury Perjury

Mr. Mosiman next reiterates his claim that the jurors must have perjured themselves when they denied during voir dire that they had heard or read about the case because the two major Milwaukee newspapers had carried accounts of the extortion plot and Mr. Mosiman's arrest. As I stated earlier in this decision, Mr. Mosiman's contention is purely speculative and does not provide a basis for the relief he seeks.

(E) Failure to Perfect Appeal

Mr. Mosiman contends both that he was denied effective assistance of counsel and the right to appeal because Mr. Camacho failed to appeal the conviction, although he told Mr. Mosiman that he had done so. According to Mr. Mosiman, after it was too late to appeal, Mr. Camacho told him that he had not perfected an appeal because he would have needed approximately $4,000 to obtain the trial transcript. Mr. Mosiman also asserts that he received ineffective assistance of counsel when Mr. Camacho told the defendant that he had filed a motion for reduction of sentence under Rule 35, Federal Rules of Criminal Procedure, but failed to do so. Mr. Mosiman subsequently filed a Rule 35 motion pro se which was denied by the court.

Mr. Mosiman's claim of ineffective assistance concerning Mr. Camacho's alleged failure to file a Rule 35 motion on the defendant's behalf must be rejected. Even if Mr. Camacho's failure to file a Rule 35 motion was the attorney's fault, Mr. Mosiman suffered no resulting prejudice. Mr. Mosiman's pro se application for Rule 35 relief was fully considered by this court and rejected by an order dated February 9, 1982. *See Farrow v. United States,* 580 F.2d 1339, 1362 (9th Cir.1978).

Turning to the contention that Mr. Camacho failed to perfect an appeal on the defendant's behalf, the record reveals that Mr. Camacho filed a timely notice of appeal in this case on October 6, 1981. On the same date, Mr. Camacho filed a motion to allow Mr. Mosiman to proceed with his appeal in forma pauperis. The motion was denied by this court on October 14, 1981.

On November 9, 1981, the Court of Appeals for the Seventh Circuit entered an order establishing a briefing schedule for the appeal and providing:

> "The district court clerk shall certify and transmit as a supplement to the record on appeal the court's ruling on the motion for leave to proceed in forma pauperis within seven (7) days of the entry of the ruling. If the motion has been denied by the trial court retained counsel may in a timely fashion request leave to proceed in forma pauperis on appeal from this Court. If the motion for pauper status is granted retained counsel may file a motion for leave to be appointed as appellate counsel. Neither one of these motions shall disturb the effect of the fore-ordered briefing schedule unless specifically requested in compliance with Circuit Rule 8."

Neither Mr. Camacho nor Mr. Mosiman filed a motion to proceed in forma pauperis with the court of appeals. Nor did anyone file a brief on the defendant's behalf.

On March 19, 1982, the court of appeals issued a Rule to Show Cause why the appeal should not be dismissed for lack of prosecution. A copy of this document was served on Mr. Camacho, but no response was filed. On May 5, 1982, the court of appeals dismissed the appeal for lack of prosecution.

An appeal from a criminal conviction is a matter of right. *Coppedge v. United States,* 369 U.S. 438, 441, 82 S.Ct. 917, 918, 8 L.Ed.2d 21 (1962). The Supreme Court, in the recent case of *Evitts v. Lucey,* — U.S. —, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), has recognized that due process requires that appellants have the effective assistance of counsel on appeals as of right. This right applies irrespective of whether counsel is retained or appointed. *Id.* — U.S. at — – —, 105 S.Ct. at 833–837. An attorney's failure to perfect an appeal when the defendant has indicated a desire to appeal constitutes ineffective assistance of counsel. *Clay v. Director, Juvenile Division, Dep't of Correction,* 749 F.2d 427, 431 (7th Cir.1984); *Hollis v. United States,* 687 F.2d 257, 259 (8th Cir. 1982), *cert. denied,* 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983). This rule is applicable not only when the attorney fails to file a timely notice of appeal but also when he does not file an appellate brief. *Clay, supra,* 749 F.2d at 431; *Cannon v. Berry,* 727 F.2d 1020, 1022–25 (11th Cir. 1984); *Robinson Wyrick,* 635 F.2d 757 (8th Cir.1981).

In supporting a claim of ineffective assistance of appellate counsel, the defendant is not required to specify the points that he would raise on appeal or to argue the likelihood of success on the merits. *See Rodriguez v. United States,* 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969); *Hollis, supra,* 687 F.2d at 1024. If an attorney fails to perfect an appeal when requested to do so, the court should vacate the defendant's sentence and resentence him, thereby allowing him to file a timely appeal. *See Rodriquez, supra,* 395 U.S. at 332, 89 S.Ct. at 1718; *Hollis, supra,* 687 F.2d at 259.

The record in the present case clearly establishes that Mr. Camacho filed a notice of appeal and a motion to proceed in forma pauperis on Mr. Mosiman's behalf. The record also indicates that Mr. Camacho did not file with the court of appeals either an application for permission to proceed with the appeal in forma pauperis or an appellate brief.

The record does not disclose, however, whether Mr. Mosiman instructed Mr. Camacho to appeal his conviction or whether he initially instructed Mr. Camacho to appeal but later withdrew the instruction. Nor does the record indicate whether Mr. Camacho advised Mr. Mosiman of the court of appeals' November 9, 1981, order setting a briefing schedule and informing Mr. Camacho of his right to request leave to proceed in forma pauperis on Mr. Mosiman's behalf. In sum, it is unclear whether Mr. Mosiman, with the advice of counsel, intelligently and voluntarily elected not to pursue his appeal.

A hearing is required under these circumstances to inquire into the facts surrounding Mr. Camacho's failure to perfect the appeal of Mr. Camacho's conviction. The court will issue a writ to produce Mr. Mosiman for the hearing and will expect to have the attendance of Mr. Camacho at such hearing. Counsel shall be appointed to represent Mr. Mosiman at the hearing. The court also invites the participation of counsel for the government at the hearing. The court will hear any competent evidence which bears on Mr. Mosiman's claim of ineffective assistance of *appellate* counsel. Based on the evidence presented at the hearing, the court will then determine whether Mr. Camacho's actions in pursuing Mr. Mosiman's appeal constituted ineffective assistance of counsel.

(F) Prosecutorial Misconduct

As the final ground in support of his section 2255 motion, Mr. Mosiman contends that his conviction was obtained as the result of the prosecution accusing him of illegal acts with which he was not charged. Specifically, Mr. Mosiman asserts that while cross-examining him, the prosecutor "viciously accused" him of fraudulent acts that he had allegedly committed in California. After reviewing the trial transcript, I can find no evidence that the prosecutor, on cross-examination, accused Mr. Mosiman of any fraudulent acts. In his closing remarks, the prosecutor did refer to the fact that Mr. Mosiman had been sued for fraud. As I noted earlier, the prosecutor was only repeating what the defendant himself had testified to on direct examination. There was nothing objectionable in the prosecutor's comment.

(G) Denial of Transcript

Mr. Mosiman, in his reply brief, contends that my denial of his motion for a trial transcript to prepare his post-conviction motion was unconstitutional. There is no constitutional right to a free trial transcript for preparation of a post-trial motion; the defendant's right to a transcript is governed by statute. 28 U.S.C. § 753(f). Applying that statute to the present case, on December 30, 1983, I denied Mr. Mosiman's motion for a trial transcript.

## CONCLUSION

A hearing is required in the present case at which the court will hear evidence related solely to Mr. Mosiman's claim that he was denied the effective assistance of counsel on appeal. Mr. Mosiman's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 will be denied in all other respects.

Therefore, IT IS ORDERED that a hearing shall be held on Thursday, April 26, 1985, at 11:00 A.M. in courtroom 225, 517 East Wisconsin Avenue, Milwaukee, Wisconsin, at which time the court will hear evidence relevant to the defendant Leland J. Mosiman's claim that he was denied the effective assistance of counsel on appeal.

IT IS ALSO ORDERED that Attorney Ben L. Chernov, Milwaukee, Wisconsin, be and hereby is appointed to represent defendant Mosiman at such hearing.

IT IS FURTHER ORDERED that defendant Mosiman's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 be and hereby is denied in all other respects.